*213 OPINION of the Court, by
Ch. J. Boyxe.
Yance and Reynolds entered into articles of agreement, bearing date the 20th of February 1802, whereby Yance agreed to sell to Reynolds a mill and fifty acres of land, the possession of which he was to give in three weeks; and as soon as certain payments in part of the price were made, to convey the same with a deed of general warranty, or give security todo so: and Reynolds on his part agreed to make those partial payments upon which the conveyance was to be made or security therefor given by Vance, and furthermore to give security for the payment of 47l. within a year, and 501. within two years *214 after the date of the contract. The possession of the mill and land was given by Yance in conformity to the agreement, and the payments, except the instalments of 47l. and 50Í. were made by Reynolds ; but the convey-ance was n°I raa(le, nor security given therefor, by Vance, nor did Reynolds give security for the two in-stalments which remained unpaid — neither party requiring, as far as appears, these stipulations to be perform-ed. In this situation the affair seems to have remained for some years after the two last instalments became due, when V ance demanded paymentand offered to make the conveyance ; but Reynolds suggesting that the title was defective, refused to make payment unless Yance would give security to warrant the title. This Vance refused to do, and brought suit and recovered judgment at law upon the article of agreement.
To injoin proceedings upon the judgment, Reynolds filed his bill in chancery, in which he alleged that tins person from whom Vance purchased had been decreed to convey a part of the fifty acres to another person, and prayed for a rescisión of the contract.
Yance in his answer admits that his vendor had been decreed to convey a part of the land sold by him to Reynolds, but says be bad previously received a conveyance without notice of the claim of the person in whose favor the decree was pronounced : and he furthermore alleges that the mill, which was the main object with Reynolds in making the contract, and nearly fifty acres thereto adjoining, were not affected by the decree.
It appearing by a survey made by an order of the inferior court, that 46| acres, including the mill, was clear of dispute, that court On a final hearing decreed that so much of the judgment at law should be injoiued as was equal to the price of the residue of the fifty acres at the rate the purchase was made, and dissolved the injunction as to the residue of the judgment, upon Vance's making a conveyance of 46| acres. From that decree Reynolds has appealed to this court.
It is contended that the contract should have been rescinded, and that the decree is therefore erroneous — 1st, Because of the delay in executing the contract on the part of Vance; and 2dly, because he was unable to convey the entire quantity of 50 acres.
*215 1. The delay ift the execution of the contract does not appear to be attributable exclusively to Vance. It is true that he was bound, upon the first partial payment# being made, either to convey or give security to convey; but it is equally true that Reynolds was bound at the same time to give security for the payment of the other instalments. The latter, therefore, could.not either legally or equitably insist upon the former doing that which he had contracted to do, without performing the act which was concurrently to be done on his part.
Besides, the delay has not been prejudicial to Reynolds : for he was put into the possession of the mill and land adjoining shortly after the contract, and as far as appears to the court has retained it ever since without molestation from any one. Under such circumstances we cannot suppose that Reynolds, who has not performed the contract on his part, has any right to object to the delay in its execution on the part of Vance.
2. The second ground assumed for the rescisión of the contract, is not, we apprehend, more valid. There can be no doubt that the deficit in the quantity sold may be of such a nature or of such an extent as to entitle the vendee to the aid of a court of equity in rescinding the contract on that account only; but on the other hand, the deficit may be so inconsiderable as to afford no reasonable objection even to the specific execution of the contract, when application is made by the vendor for that purpose. It is indeed difficult, perhaps impracticable, to lay down any general rule upon thigksubject. Each case must of necessity depend much upon ⅜& own particular circumstances. But it is inferable from all the cases turning upon this point which are to be found in the books, that where the deficit is inconsiderable, and not in the main subject which formed the inducement for entering into the contract, it will not be regarded as a sufficient ground for; rescinding the agreement.(a) Such it is clear is the case in this instance. The mill and mill-seat formed no doubt the principal inducement to make the purchase, and the defect Of title is not in these, but in a small part of the land, not essential to their enjoyment.
Decree affirmed with costs.

 Finley's exr's. verfus Lynch, vol. 2, 566.