10 757
45a 28
46a 348

COATS, ET AL., vs. ROBINSON & HENDLEY, ADM'RS, &C.

1. A *femme covert* is regarded in equity as to her separate property, as a *femme sole*.

2. Where a *femme covert* gives a note or bond, it is presumed that she intends to charge her separate property.

## APPEAL from Callaway Circuit Court.

TODD & SHEELEY, *for Appellants, insist:*

1. That the court cannot decree the sale of the slaves, as they were not made by contract subject to the debt.

2. The complainants intestate concealed defects and misrepresented the location of the land, and the price agreed to be given is greatly beyond the true value of the land, and is not fair and reasonable, and specific performance should not be enforced. Story's Eq., sec. 769 and following; King vs. Hamilton, 4 Peters Rep., 311; 2 Story's Eq., sec. 778; Sugden on Vendors, 194; Gowger vs. Gorden, 4 Blackford, 110; Gorden vs. Gowger, 4 Blackford, 231; Cook, ex'r., vs. Grant, 16 Serg. & Raw., 210.

3. The complainants should have shown themselves able to convey the land sold by their intestate, by exhibiting a chain of title papers, before the court could, upon their prayer, decree a specific performance. In this case, they are unable to convey the land sold. Jarman vs. Davis, 4 Monroe, 118; Judson vs. Wass, 11 Johns. Rep., 525; Sugden on Vendors, 410; Hepburn & Dundas vs. Colinauld, 5 Cranch, 262; Bates vs. Delavan, 5 Paige Rep., 299.

4. Part performance of a contract cannot be enforced by a vendor against the vendee. The vendee is entitled to his whole contract, and any abatement in price must be made at defendants' request, and upon the prayer of defendants to take part and damages as the balance. Story's Eq. Jur., sec. 769 and following. It is then settled that it requires a much less strength of case for a vendee to resist than for a vendee to enforce specific performance. Jones vs. Shackelford, 2 Bibb, 410; McConnel's heirs vs. Dunlap's devisees, Hardin, 41; Sugden, 270; Waters vs. Travis, 9 Johns. Rep., 450.

5. That portion of the land included in the farm of Johnson, and to which he had no title, being a material part of the farm, a deduction (if any at all is made) should have been made at the highest prices. Stevenson, &c., vs. Harrison, &c., 3 Littell, 170; Pringle vs. Samuel, 1 Lit., 46.

A court of equity will not decree a specific performance of contract when it would be hard and unconscionable. Seymour vs. Delancy and others, 6 Johnson Chan. Rep., 222.

It may be shown in equity that the written contract does not contain all the contract. Dwight vs. Pomeroy, 17 Mass. R., 303.

The party taking personal security does not retain a lien even on the land, and such contract shows that a lien was not retained on the separate property of the wife.

The bill alleges a special contract of lien on the slaves. None such is proven. Can a decree be made upon the implied equity to subject all the estate? And can such equity exist where personal security is taken?

The law abolishing imprisonment for debt, applies to this case.

LEONARD, *for Appellee, insists:*

1. A bond or promissory note of a married woman to pay a debt, is a charge upon her separate property, and equity will make this charge available by directing her separate property to be applied to the payment of the debt. Murray vs. Barber, 9 Com. Eng. Chan. Rep., 1-9; Hulme vs. Tenant, 1 Brown's Chan. Rep., 14.

2. The proof utterly fails to establish any false or fraudulent representations on the part of Johnson upon the sale of the land, in relation to its situation, quantity, and quality.

3. There is no proof of any deficiency in the quantity of land or improvement; but if there be even the alleged deficiency, it is a case for compensation, and no ground for withholding an execution of the contract, and the compensation allowed in the decree is ample for the alleged deficiency.

4. Mr. and Mrs. Coats never tendered bonds to Johnson in his lifetime in payment of the note; nor to his administrators since his death, except upon the condition that they would make an abatement in the amount of the note; but if bonds were tendered and refused before the commencement of the suit, that constitutes no bar to the relief given. The defendants have not alleged or shown their present willingness or ability to pay in bonds, nor have they brought the bonds into court, or offered to pay in that way.

NAPTON, J., *delivered the opinion of the Court.*

The administrators of Joseph D. Johnson filed a bill in chancery in 1845, against William Coats and his wife and Thomas Callaway and the heirs of said Johnson, for the purpose of obtaining payment of a note executed by said Coats and wife and Callaway, out of the separate estate of said Cena Coats. The facts charged in the bill were, that in 1843, Johnson, the intestate, sold his farm in Callaway county to Mrs. Coats for $1250, and took a note signed by her and her husband and Thomas Callaway for the amount, payable in twelve months. The title was to be made when the purchase money was paid, and for this purpose Johnson gave a title bond to Mrs. Coats. The bond for title calls for "162 acres including all the farm on which said Johnson resided," being a half quarter and two quarter quarter sections of land. Immediately after the purchase, Mrs. Coats and her husband took possession of the land. Previous to the marriage of Mrs. Coats to Mr. Coats, a marriage contract

had been made between them, by which she reserved to herself the exclusive management of her separate property. She was at the time the owner of four slaves and of some real estate. Johnson died intestate in the spring of 1844, and the complainants were his administrators. The bill charged that Coats, the husband, and Callaway, were insolvent, and that there was no other property out of which the note could be made, except the separate property of Mrs. Coats.

The answers of Callaway, Mr. Coats and his wife, admitted the principal facts charged in the bill, but denied that Mrs. Coats intended to charge her separate property, and insisted that it was understood between the parties that Johnson was to take certain cash notes and bonds; that Johnson died before these notes were tendered, and that his administrators have since refused to receive them.

They also relied for a defence to this suit, that Johnson's conduct in the sale was fraudulent—that he represented that the tract contained one hundred acres of arable bottom land, when there were only about forty-three—that he represented that all his farm was upon his land, when there were about eight and a half acres, including a tobacco barn, upon public land—and that he further represented the tract to contain 162 acres, when in truth it only contained 156 acres.

Upon the hearing, it appeared in evidence that the parties went to Johnson's house to conclude the contract and prepare and execute the writings; that Mr. Coats wrote the title bond, and whilst writing it, enquired of Johnson for his title papers, who replied that he had only one of them in the house and that the others were in the clerk's office at Fulton; that he could come near the number of acres, which he thought were about 165, but told Mr. Coats to put down 162, to avoid going over the number. After the title bond was executed, it was suggested that Johnson should take in payment of the note executed by Mrs. Coats and her husband and Callaway, some cash bonds and notes that were to be assigned to her by Lieper & Henderson. To this, Johnson assented. There was no evidence of any representation by Johnson in relation to the character or quantity of the land, other than might be inferred from the title bond. It appeared that there were only about 42 or 43 acres of bottom land, and that about eight acres of this were outside of Johnson's title. The witnesses who were examined seemed to agree that the land was not worth more than one-half of the price which Mrs. Coats had agreed to give for it.

The Circuit Court decreed that the complainants were entitled to the payment of the note, with interest, out of the slaves, deducting sixty-six

dollars as a compensation for a deficiency of about eight acres, with the building thereon; and for this purpose, a commissioner was appointed to sell the slaves, in the event the money was not paid. It was further decreed, that upon the satisfaction of this decree, the title should vest in Cena Coats, to her sole and separate use. From this decree the defendants appealed.

It is well established by a current of decisions, both in England and this country, that a *femme covert*, with respect to her separate property, is regarded in a court of equity as a *femme sole*, and that when she enters into agreements which indicate her intention to bind her separate property, such agreements will be effectuated by the court, unless they are characterized by fraud or some unfair advantage. Bullfer vs. Clark, 17 Ves., 375; Norton vs. Turvill, 2 P. Wm's., 144; Anon., 18 Ves., 258; Greatly vs. Noble, 3 Mad., 79; Stewart vs. Ld. Kirkwell, 3 Mad., 387; Murray vs. Barber, 3 Myle & K., 1; Jacques vs. Meth. Ep. Church, 17 Johns. R., 548; Ewing vs. Smith, 3rd Eq. R., (S. C.) 447; Richardson vs. Duggets, 4 Vt. R., 336. Where the *femme covert* executes a bond or a note, or accepts a bill, it is held that she must intend by such instrument to bind her separate estate, because these acts would otherwise be nugatory, and these instruments could in no other way have any validity or operation. The application of these principles to the present case seems clear, and the only points open to enquiry would appear to be the fraud and misrepresentation charged in the answers. These charges were, however, entirely unsupported by proof. There was no evidence that any representations of any kind were made, either in relation to the quality of the land or the extent of arable land, or in relation to the quantity of acres embraced by the whole tract. The only representation on the subject of the quantity of land was that contained in the title bond, in which it is stated that the half quarter and the quarter quarter sections agreed to be conveyed included the farm of Johnson. This title bond was written by Coats himself, and though it appears that the number of acres was incorrectly stated, it does not appear that this mistake was either a dishonest or a material one. The Circuit Court, in its decree, allowed a compensation for the eight acres found to be on public land, and there can be no doubt that this deficiency was a proper subject for compensation, and could constitute no obstacle to a specific execution of the contract. Reynolds vs. Vance, 4 Bibb, 215. The bargain, it is true, seems not to have been an advantageous one on the part of Mrs. Coats; but the witnesses who gave their opinions in relation to the value of this tract, do not give any facts by which the **propriety of their** estimate could be

ascertained. Nothing can be more various than the opinions entertained by different individuals in relation to the value of a farm. So many different circumstances enter into the consideration of those who make the estimate, which are differently appreciated by different tastes, that it would be very unsafe to predicate the interference of a court upon testimony of this character, where there is no mark of fraud or concealment, or any undue advantage. We shall therefore affirm the decree of the Circuit Court.

SCOTT, J., dissenting.