THEODORE KIMM, Plaintiff in Error, *v.* JOHN WEIPPERT, AND ELIZA WEIPPERT, HIS WIFE, Defendants in Error.

1. *Husband and wife — Separate property of wife — Particular mode of disposition will not preclude her from adopting another mode, when.* — A *femme covert* is absolutely a *femme sole* with respect to her separate estate when she is not specially restrained, by the instrument under which she acts, to some particular mode of disposition. The *jus disponendi* is incident to her separate estate, and follows it by implication. And although a particular mode of disposition is pointed out, it will not preclude her from adopting any other mode of disposition unless there are words restricting her power of disposition to the only mode pointed out.

2. *Note by married woman to create a charge on her separate estate, must show an intent to charge it, and the intent must be gathered from the contract itself.* — A note signed by a married woman, jointly with her husband, does not create a charge upon her separate estate unless a true interpretation of the contract shows an intent to render it liable. And her intent must be gathered from the contract itself, and not from extraneous parol evidence.

Thus, on the sale of certain land, a note for the purchase money, signed by the wife jointly with her husband, and secured by deed of trust, would not, on that state of facts, create a charge on the separate estate of the wife so as to render it liable for the residue of the debt in case the note was unpaid, and the land being sold under the deed of trust failed to satisfy it; and for the reason that a true interpretation of the note and deed taken together showed that the only security intended to be pledged was the property purchased.

*Error to Second District Court.*

*Pipkin & Thomas*, for plaintiff in error, cited in argument Coates v. Robinson, 10 Mo. 757; Whitesides v. Cannon and Wife, 23 Mo. 457; Claflin v. Van Wagoner, 32 Mo. 252; 2 Sto. Eq., §§ 1400–1; 2 Rop. Husb. & Wife, 246; Hulme v. Tenant, 1 Bro. C. C. 14 and note; Jaques v. M. E. Church, 17 Johns. 581.

*Ahloers & Williams*, for defendants in error.

I. The Circuit Court below erred manifestly in rendering judgment against Eliza Weippert upon the merits of the case. (1) She had not such a power of disposition over her separate property as to empower her to create charges on the same by the execution of promissory notes. It requires the general and absolute power to dispose of her separate estate to enable a married woman to charge debts by promissory notes upon the same. (Sto. Eq. Jur., §§ 1397, 1399.) The lot 3 being conveyed to Eliza during marriage, without trustees, and the power of disposition being presented in the deed, she can not convey the same or make charges thereon, outside of that power, for her heirs have an interest in the property. (Sto. Eq. Jur., §§ 1391–2.) (2) If Eliza Weippert had such general power by said deed, then the facts and evidence show that she did not charge the promissory notes in question upon her separate property, lot 3 in Windsor Harbor. The intention of a *femme covert* to bind her separate property for debts contracted by her must be proven, either expressly or by implication. Now, if in the first instance the intention of Eliza Weippert to charge the notes executed against the real estate be implied from the very fact of executing the same, then such *prima facie* implication is more than sufficiently rebutted and overcome by the evidence given in the case. If a married woman executes a note and does not otherwise secure it, the law may presume that she intends to charge it upon her separate property, but the presumption is only *prima facie*, and far from being conclusive; it is already, as Story says, a strong case of constructive implication by courts of equity, and the reason of the presumption is that the intention must

have been that the estate shall operate some way, and that it can have no operation except as against her separate estate. But in this case it did and could have operated, because the notes operated upon the lots the deed of trust was given on, by which they were secured. (Sto. Eq. Jur., § 1400.)

II. The instruction No. 3 asked by Kimm and given was manifestly wrong. The presumption may be rebutted by parol evidence, and such parol evidence does not vary the notes executed.

WAGNER, Judge, delivered the opinion of the court.

It will be unnecessary to notice in detail the preliminary question raised in regard to the pleadings in this case. That the petition, tested by the rules of scientific pleading, is badly drawn, is unquestionable. But, as the court disregarded that part of it which prayed judgment on the notes, and tried the cause solely on the equities, we are inclined to treat it simply as a petition in equity; and we think that justice will be subserved and the interests of the parties promoted by examining the case upon its merits. The proceeding was in the nature of a bill in equity, to subject the separate estate of the defendant Eliza to the payment of certain notes due and owing to the plaintiff.

From the record it appears that the notes were given in consideration of the purchase of certain lots sold by plaintiff in the town of Kimmswick, Jefferson county, Mo. Some of the purchase money was paid, and the notes were executed for the remainder, signed by both the defendants, they being at the time husband and wife. To secure the payment of the notes a deed of trust was made and delivered, in which both of the defendants joined; and default being made in the payments, the property was sold at trustee's sale, and not bringing enough to satisfy the amount due, this suit was brought to obtain satisfaction of the residue.

It also appears that, at the time the property was purchased from Kimm, the defendant Eliza was possessed of a lot in Windsor Harbor, as her separate estate, but that the plaintiff had no notice of that fact, and this is the property which is now sought to be proceeded against.

The Circuit Court granted the relief prayed for, declared the debt a lien upon the estate, and ordered its sale for satisfaction. This decree was reversed in the District Court, upon a mere question of pleading. The deed conveying the estate to the defendant Eliza contains this clause, viz: "to have and to hold, together with all the rights, immunities, privileges, and appurtenances to the same belonging, unto the said Eliza Weippert, for her sole and separate use and benefit and behoof, separate and apart from her said husband, and for her heirs and assigns forever, with full power, by her deed duly executed and joined in by her said husband, to encumber, sell, and convey the same conditionally or absolutely. The said John Weippert shall in no event have or obtain any interest or estate in said property by virtue of this deed, but the same shall belong absolutely to the said Eliza Weippert as her own separate and individual property." It is now contended that as the deed conveying the separate estate to Mrs. Weippert provides that she may dispose of it by joining with her husband in a conveyance for that purpose, she is incapable of disposing of it in any other way; and it is further insisted that in no event is the separate estate chargeable for the debt. The deed vests in Mrs. Weippert the full, absolute, and complete title, and gives her the entire ownership, and that will be generally held to carry with it the most ample power of disposition. Some of the earlier cases decided that where a particular mode was pointed out in the deed to a married woman, by which she might convey her separate estate, she was restricted and could convey by that mode only. Chancellor Kent was of the opinion that the power of disposition of the separate estate of the wife by her is not absolute, but only *sub modo* — to the extent of the power given her by the instrument — and if the instrument points out a particular manner of disposition, then no other can be adopted, although there is no express prohibition of any other mode; and there are other authorities of the same purport: (Jacques v. M. E. Church, 3 Johns. Ch. 77; Lancaster v. Dolan, 1 Rawle, 231; Thomas v. Farwell, 2 Whart. 11; Morgan v. Elam, 4 Yerg. 375; Rogers v. Smith, 4 Penn. 93.) But the later, better, and prevailing opinion is, that a *femme covert* is absolutely a *femme*

*sole* with respect to her separate estate, when she is not specially restrained, by the instrument under which she acts, to some particular mode of disposition ; and although a particular mode of disposition is pointed out, it will not preclude her from adopting any other mode of disposition, unless there are words restraining her power of disposition to the very mode pointed out. (Jacques v. M. E. Church, on appeal, 17 Johns. 548 ; Vizonneau v. Pegram, 2 Leigh, 183 ; West v. West, 3 Rand. 373 ; Whitaker v. Blair, 3 J. J. Marsh. 239 ; Strong v. Skinner, 4 Barb. 546–53 ; Machir v. Burroughs, 14 Ohio St. 519 ; Leaycraft v. Hedden, 3 Green's Ch. 512.) When the leading case of Jacques v. M. E. Church, *supra*, was in the Court of Errors, where all the law judges concurred in reversing the judgment of the chancellor, Spencer, C. J., declared that the decisions fully established, " that a *femme covert*, with respect to her separate estate, is to be regarded in a court of equity as a *femme sole*, and may dispose of her property without the consent or concurrence of her trustee, unless she is specially restrained by the instrument under which she acquires her separate estate ;" and " that the established rule in equity is, that when a *femme covert*, having separate property, enters into an agreement, and sufficiently indicates her intention to effect it by her separate estate, a court of equity will apply it to the satisfaction of such an engagement." And Platt, J., considered the rule to be " that a *femme covert*, having a separate estate, is to be regarded as a *femme sole* as to her right of contracting for and disposing of it. The *jus disponendi* is incident to her separate property, and follows, of course, by implication. She may give it to whom she pleases, or charge it with the debts of her husband, provided no undue influence be exerted over her ; and her disposition of it will be sanctioned and enforced by a court of equity without the assent of her trustee, unless that assent be expressly made necessary by the instrument creating the trust. And the specification of any particular mode of exercising her disposing power does not deprive her of any other mode of using that right, not expressly or by necessary construction negatived in the devise or deed of settlement." In the instrument we are now considering there is no restriction or lim-

itation. There are affirmative words showing that the wife may convey by joining with her husband, but there is nothing to indicate that it was intended that she should be restrained to that particular mode. As the absolute title was cast upon her, the *jus disponendi* accompanied it; and in the absence of negative words limiting her power in regard to the manner and means to effect a charge or disposition, I am of the opinion that it was entirely competent for her to encumber or sell in any way she saw proper. Did her signing the notes in connection with her husband evince an intent to charge her separate estate? The ruling of this court has been that, where a married woman executed a promissory note jointly with her husband, although it did not appear on what account the note was executed — whether for the benefit of the wife or of the husband, or for their joint benefit — equity would subject real estate held to the separate use of the wife to the payment thereof, and would decree a sale of the same. (Whitesides v. Cannon, 23 Mo. 457; Coates v. Robinson, 10 Mo. 757; Claflin v. Van Wagoner, 32 Mo. 252; Schafroth v. Ambs, *ante*, p. 114.) In Whitesides v. Cannon, Judge Leonard, in delivering the opinion of the court, although professing to follow strictly the case of Coates v. Robinson, entered into a very elaborate discussion of the question and a thorough review of the English cases. That the conclusion which he deduced is amply sustained by the English equity authorities, is undeniable, and yet it must be admitted that it rests on no very satisfactory foundation, and that the best considered American cases have greatly changed and modified it. The whole doctrine of proceeding against the separate estates of married women is the creature of equity, and was resorted to to prevent injustice. The separate estate was a provision for the wife's separate use and benefit, independent of her husband, in which he had no interest, over which he had no right of control. She could not, at common law, hold the legal title to property, either personal or real, for the reason that during her state of coverture she and her husband were considered one person, and her identity, so far at least as the right to hold was involved, was lost or merged in him. There was, therefore, no way at law in which

such separate estate of the wife could be reached to satisfy the demands upon it, however equitable and just, and although they may have been created by her for her individual benefit and upon the credit of her separate estate. (2 Sto. Eq. Jur., §§ 1366–8.)

To prevent the great injustice which might otherwise arise, and inasmuch as the wife's creditors had not the means at common law of compelling payment of her debts which she contracted to pay out of her separate estate, courts of equity undertook to give effect to them—not as personal liabilities, but by laying hold of the separate property as the only means by which they could be satisfied. (2 Spence's Eq. Jurisdic. 324.) Grave doubts were for a while entertained whether the wife could dispose of the property without special authority conferred by the instrument conveying it to her, but it was finally decided that she could, on the ground that the right of disposal was a necessary incident to the right of property. It is undoubted that this universal *jus disponendi* was the exclusive and only foundation for the right in question. Lord Thurlow, in the case of Fettiplace v. Gorges (3 Bro. C. C. 8), places the right upon this ground, and I am not aware that any other basis has ever been suggested for it. Assuming, then, this to be the foundation, would not reason dictate that the wife, to avail herself of it, should make some disposition of the specific property itself, or by some act clearly indicate an intention to charge it and render it liable? Yet the Master of the Rolls, in Norton v. Turvill, 2 Pr. Wms. 144, and in Standford v. Marshall, 2 Atk. 69, held the separate estate of a married woman liable for the payment of her bond, although the bond in no way referred to her separate estate, and in the latter case was given for money lent to her husband. Lord Chancellor Thurlow followed these cases, and the reasoning in support of them seems to be this: that it being the rule in equity that a wife who had a separate estate might deal with such estate in the same manner as if she were *sole*, it followed that such estate was liable for her engagements in the same manner as it would be if she were a *femme sole*. The equitable rule, which, being founded in the right of the wife to dispose of her property, went no further than to allow

her to make contracts specifically appropriating or charging her separate estate, was thus extended so as to enable her to contract generally, without in any manner referring to such estate.

The doctrine was severely characterized by Chancellor Kent in The M. E. Church v. Jacques, 3 Johns. Ch. 77. In his admirable criticism of the English cases, where, speaking among others of the authorities above referred to, he says: "It is difficult to perceive upon what reasoning or doctrine the bond or parol promise of a *femme covert* could for a moment' be deemed valid. She is incapable of contracting, according to the common right mentioned by Lord Macclesfield; and if investing her with separate property gives her the capacity of a *femme sole*, it is only when she is directly dealing with that very property. The cases do not pretend to give her any of the rights of a *femme sole* in any other view or for any other purpose." But though, as above intimated, Lord Thurlow followed the cases before cited, he seems to have been dissatisfied with the reasoning on which they were based; and in Hulme v. Tenant, 1 Bro. C. C. 16, which is regarded as the leading case on the subject, where the separate estate of a wife was held liable for the payment of her bond given for money borrowed, part of which had been borrowed by her husband and the residue by herself, he uses this language: "I take it, therefore, it is impossible to say but that a *femme covert* is competent to act as a *femme sole* with respect to her separate property when settled to her separate use; but the question here goes a little beyond that. It is not only how far she may act on her separate property; I have no doubt about that; but the question is, how far her general personal engagements shall be executed out of her separate property." Although he clearly pointed out the distinction as to the liability of the separate estate, he yielded to the previous cases, and held the estate chargeable. He further adds: "I have no doubt about this principle, that if a court of equity says a *femme covert* may have a separate estate, the court will bind her to the whole extent as to making the estate liable to her own engagements, as, for instance, for payment of debts," etc.

Lord Eldon repeatedly expressed his disapprobation of the

decision in Hulme v. Tenant, but, according to his accustomed habit of always doubting but never overturning judgments, he followed the rule therein laid down. But afterward, in the case of Bolton v. Williams, 2 Ves. 138, Lord Chancellor Loughborough rejected the reasoning of Thurlow as unsound, and denied the liability of a married woman's separate estate for her general parol engagements, and explained the previous cases upon the ground that the securities which the wife had executed operated as appointments of her separate property; that is, as appropriations or pledges of such property for the payment of the debt for which the security was given. This new doctrine, that a written security was an appointment, rested on no substantial foundation, and was plainly erroneous, and proceeded upon the assumption that the wife's separate estate was not liable for general engagements, but only such as were specifically charged upon it, and yet held that it was liable for a bond or note which in no manner referred to it. This theory, that a written security was an appointment and a charge, while it was otherwise with a mere parol promise, was maintained unchanged from the time of its introduction by Lord Loughborough, in Bolton v. Williams, until the case of Murray v. Barlee, 3 M. & K. 209, when Lord Brougham rejected the distinction between a written security and a promise by parol, and extended the rule so as to make the parol engagement of the wife a charge as well as her bond or note.

"In all these cases," says the Lord Chancellor, at page 223, "I take the foundation of the doctrine to be this: the wife has a separate estate, subject to her own control and exempt from all other interference or authority. If she can not affect it, no one can; and the very object of the settlement which vests it in her exclusively is to enable her to deal with it as if she were discovert. The power to affect it being unquestionable, the only doubt that can arise is whether or not she has validly encumbered it. At first the court seems to have supposed that nothing could touch it but some real charge, as a mortgage or an instrument amounting to an execution of a power, where that view was supported by the nature of a settlement, but afterward was more guarded, and the court only required to be satisfied that she intended to deal with

her separate property. When she appeared to have done so, the court held her to have charged it, and made the trustees answer the demand thus created against it. A good deal of the nicety that attends the doctrine of powers thus came to be imported into the consideration of the subject. If the wife did any act directly charging the separate estate, no doubt could exist, just as an instrument expressed to be in execution of a power was always, of course, considered as made in execution of it. But so, if by any reference to the estate it could be gathered that such was her intent, the same conclusion followed. Thus, if she only executed a bond, or made a note, or accepted a bill, because those acts would have been nugatory if done by a *femme covert* without any reference to her separate estate, it was held, in the cases I have above cited, that she must be intended to have designed a charge on that estate, since in no other way could the instrument thus made by her have any validity or operation; in the same manner as an instrument, which can mean nothing if it means not to execute a power, has been held to be made in execution of that power, though no direct reference is made to the power. Such is the principle. * * * But doubts have been in one or two instances expressed as to the effect of any dealing whereby a general engagement only is raised; that is, where she becomes indebted without executing any written instrument at all. I own I can perceive no reason for drawing any such distinction. If, in respect of her separate estate, the wife is in equity taken as a *femme sole*, and can charge it by instruments absolutely void at law, can there be any reason for holding that her liability, or, more properly, her power of affecting the separate estate, shall only be exercised by a written instrument? Are we entitled to invent a rule, to add a new chapter to the statute of frauds, and to require writing where the act requires none? Is there any equity reaching written dealings with the property, which extends not also to dealings in other ways, as by sale and delivery of goods? Shall necessary supplies for her maintenance not touch the estate, and yet money furnished to squander away at play be a charge on it, if fortified by a scrap of writing? No such distinction can be taken upon any conceivable principle."

But the reasoning of Lord Brougham, in Murray v. Barlee, has been since overthrown, and it constitutes no longer the doctrine of the English courts. In the case of Owens v. Dickinson, 1 Craig & Ph. 58, Lord Chancellor Cottenham combated the assumption that because a married woman has executed a bond or note, or contracted a debt in any other form, therefore she must have intended to charge such debt upon her separate estate. He shows that if the doctrine is sound, then every debt must become a specific lien upon the separate estate, to be paid in the order of its priority, while Lord Brougham held that such debts are all to be paid *pari passu*. He then proceeds to prove that a contract which is entirely silent as to the separate estate, and makes no reference to its existence, can not, by any legal reasoning, be shown to have been intended as a disposition of such estate. He says : " It would have been operative upon the *femme covert's* separate estate, but not by way of the execution of a power, although that has been an expression sometimes used, and, as I apprehend, very inaccurately used, in cases where the court has enforced the contracts of married women against their separate estates. It can not be an execution of the power, because it neither refers to the power nor to the subject-matter of the power ; nor, indeed, in any of the cases, has there been any power existing at all. Besides, it was argued in Murray v. Barlee, if a married woman enters into several engagements of this sort, and all the parties come to have satisfaction out of her separate estate, they are paid *pari passu ;* whereas, if the instruments took effect as appointments under a power, they would rank according to the priorities of their dates. It is quite clear, therefore, that there is nothing in such a transaction which has any resemblance to the execution of a power. What it is, it is not easy to define. It has sometimes been treated as a disposing of the particular estate, but the contract is silent as to the separate estate ; for a promissory note' is merely a contract to pay, not saying out of what it is to be paid, or by what means it is to be paid ; and it is not correct, according to legal principles, to say that a contract to pay is to be construed into a contract to pay out of a particular property, so as to constitute a lien upon that property.

Equity lays hold of the separate property, but not by virtue of anything expressed in the contract; and it is not very consistent with correct principles to add to the contract that which the party has not thought fit to introduce into it."

The view taken of the matter by Lord Thurlow, in Hulme v. Tenant, is more correct. According to that view, the separate property of a married woman being a creature of equity, it follows that if she has a "power to deal with it, she has the other power incident to property in general, namely: the power of contracting debts to be paid out of it; and inasmuch as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property as the only means by which they can be satisfied."

Lord Cottenham here does not go back to the doctrine of Thurlow, but attempts to support the established rule by an entirely new process of reasoning. It will be thus seen that while the English chancellors have steadily adhered to the principle, hardly any two of them agreed upon any common ground by which it can be supported. The views of Lord Cottenham will prevail till some subsequent chancellor shall detect in them some fallacy, and what reasoning he will resort to in support of the cases it is impossible to foretell. It seems that a rule which has to be constantly upheld by inharmonious, floating, and contradictory reasons can not rest on any very fixed or satisfactory basis. The latitude of construction which the courts of England have maintained is calculated to elude and defeat the very object for vesting separate property in married women. In the majority of cases the property is given to her " to protect her weakness against her husband's power, and her maintenance against his dissipation." But if the mere fact of her signing a promissory note, not for her own benefit, is to be held as an appropriation or a ground for subjecting her estate to payment, the protection is an illusion. The Supreme Court in Massachusetts, after a very able discussion of the subject, come to the following conclusion: "And we think," the court says, " upon mature and full consideration, that the whole doctrine of the liability of her separate

estate to discharge her general engagements rests upon grounds which are artificial, and which depend upon implications too subtle and refined. The true limitations upon the authority of a court of equity in relation to the subject are stated with great clearness and precision in the elaborate and well-reasoned opinions of the Court of Appeals in New York, in the case of Yale v. Dederer ; and our conclusion is that when, by the contract, the debt is made expressly a charge upon the separate estate, or is expressly contracted upon its credit, or when the consideration goes to the benefit of such estate, or to enhance its value, then equity will decree that it shall be paid from such estate or its income to the extent to which the power of disposal of the married woman may go. But when she is a mere surety, or makes the contract for the accommodation of another, without consideration received by her, the contract being void at law, equity will not enforce it against her estate, unless an express instrument makes the debt a charge upon it." (Willard v. Eastham, 15 Gray, 328, per Hoar, J.) And it is the express doctrine of the best-reasoned authorities that to render the separate estate of a married woman liable, the debt must be contracted either for the benefit of the separate estate or for her own benefit, upon the credit of the separate estate, or where in the instrument executed by her she makes a specific charge upon her estate. (Jacques v. M. E. Church, 17 Johns. 548 ; Willard v. Eastham, *supra;* Gardner v. Gardner, 7 Paige, 112 ; 22 Wend. 528 ; Curtis v. Engel, 2 Sandf. Ch. 287 ; *Dyett v. North American Coal Co.*, 20 Wend. 570 ; Knowles v. McKamly, 10 Paige, 343 ; Yale v. Dederer, 18 N. Y. 265 ; 22 N. Y. 450 ; Todd v. Lee, 15 Wis. 365.)

It is not a question as to the wife's power to charge her separate estate, for that is conceded, but it rests essentially upon the manner and purpose. It is to be regretted that the attention of Judge Leonard was not particularly called to the reasons of the rule, and the qualifications above suggested, when he reviewed the cases in Whitesides v. Cannon. The case of Coates v. Robinson, 10 Mo. 757, is entirely consistent with the limitations in the authorities above referred to. There, Mrs. Coates was possessed

of a separate estate, and she purchased of Johnson a tract of land for which she and her husband gave their promissory notes. The title bond was executed to her, and the land was to be deeded to her on the payment of the purchase money. Here was a contract in which she was wholly interested, for her personal benefit, in which she received the consideration, and for the payment of which her separate estate was of course liable. It is true, Judge Napton, in delivering the opinion of the court, did not advert to this distinction, but placed the decision upon the broad ground advanced by the English courts, though the facts of the case did not require the enunciation of the rule to that extent. And Judge Leonard, following the case implicitly, re-states the doctrine in its fullest latitude. Without undertaking to unsettle any law, or overrule any case decided in this court, I have felt constrained to express my dissatisfaction with the extent to which the doctrine has been carried. But, admitting that we are bound by the prior decisions, does this case show that Mrs. Weippert intended to charge her separate property? The law, in its utmost rigor, places the charge or liability on the ground that signing a note evinces an intent to make the separate estate liable, otherwise the transaction would be nugatory. The undertaking is wholly implied. Judge Story, while conceding the position with evident hesitation, cautiously adds that it furnishes "a strong case of constructive implication, founded more upon a desire to do justice than upon any satisfactory reasoning." (2 Sto. Eq. Jur., § 1400.)

Mrs. Weippert was introduced as a witness, and testified, against the objections of the plaintiff, that at the time she signed the notes and joined in the execution of the deed of trust, she had no intention of binding her separate estate; and the plaintiff then offered himself as a witness and stated that at the time the contract was entered into and the papers drawn he did not know that Mrs. Weippert owned any separate property. This evidence should have been excluded. The intention could not be proved by extraneous evidence *dehors* the contract, but must be inferred from, and therefore is embraced in, or manifested by, the contract itself. No court has ever held or intimated that parol evi-

35—VOL. XLVI.

dence was admissible to prove that the bond or note of a *femme covert* was intended to be a charge upon her estate. To permit this would be in direct conflict with the rule which excludes parol evidence offered to explain a written instrument. (Selden, J., in Yale v. Dederer, 22 N. Y. 456.) The very point was decided by the court in Kentucky, where it was held that the declaration of a married woman at the time she signed the note, that her separate property should not go for the purpose of its payment, was properly excluded. (7 B. Monr. 293.) The intent, to be of any importance, must be a part of the contract; that is, the true meaning of the contract, when justly interpreted, must be that the debt which it creates should be a charge upon the estate. We are, then, to arrive at our conclusion by throwing out of view entirely the parol testimony and deciding the case upon the written instruments. A part of the purchase money was paid, the notes were made for the balance, and to secure payment a deed of trust was executed upon the whole property purchased. To my mind it is clear that this was the only security intended or thought of by the parties, and that there was no design of charging the separate property of the wife.

The judgment of the District Court, although not given for the proper reason, will be affirmed. Judge Bliss concurs. Judge Currier concurs in the result.