ALEXANDER MILLER *et al.*, Appellants, *v.* MATTIE BROWN *et al.*, Respondents.

1. *Married women, actions to charge separate property of—Insolvency of husband may be shown in evidence.*—In an action to charge the separate estate of a married woman for goods sold her, the insolvency of the husband may be proved in order to show, first, to whom credit was given, and second, whether the goods were necessaries adapted to the condition of the wife.

2. *Married women, actions to charge separate property of—Intent to charge separate estate will be presumed, when.*—In suit to charge the separate property of a married woman for goods sold her, it appeared that she was introduced to plaintiff as a woman of wealth, and, before the debt sued on was contracted, had purchased several bills in her own name, which were always paid on presentation. The bill in suit she promised to pay at different times. Her own testimony showed that she did not intend to charge her separate estate, but did intend to charge her husband; that what she bought were necessaries adapted to her condition in life; but she admitted that she bought them in her own name, saying nothing about her husband. *Held*, that as she made the contract for herself, in her own name and on her own credit, the law will presume that she intended to charge her separate estate, notwithstanding her testimony to a contrary intent.

1. Under such circumstances, as against her property, it was immaterial whether the goods furnished were necessaries which the husband ought to have supplied.

2. In such suit against the husband, the proper amount of money to be expended by her for necessaries was to be determined by his condition in life, and not hers.

3. It was immaterial whether her debt was evidenced by a written instrument or not. Under the decision in Whitesides v. Cannon, the difference between the written and parol promise of a married woman is necessarily ignored. Yet there is this distinction touching the burden of proof: where goods designed for personal or family consumption are sold to the wife on her parol promise of payment, she will be presumed to purchase on the credit of her husband, while purchases made on her written agreement will be presumed to have been made on her separate credit.

### *Appeal from St. Louis Circuit Court.*

*Peacock & Cornwell*, for appellants.

I. There can be no doubt that a married woman can charge her separate estate by verbal as well as by written contracts. The only difference is that the writing is the evidence and indicates her intention in the one case; while such intention, in the absence of an express statement of her intent to charge, has to be shown from circumstances. The reasoning in the case of Whitesides v. Cannon, if good to support a note merely signed by the wife, is certainly good to support her verbal contracts in equity as a charge against her separate estate. See on this subject 2 Ala. 338; 16 B. Monr. 375; Whitesides v. Cannon, 26 Mo. 457; 17 Ala. 803, 805-6.

II. It is a clear obligation which rests upon every husband to support his wife; that is, supply her with necessaries suitable to her situation and his own circumstances and condition in life. (Schouler's Dom. Rel. 76; 2 Kent's Com. 146.) But this obligation only goes to the extent of his own circumstances and condition in life.

*Lackland, Martin & Lackland*, for respondents.

The question has never been decided in this State as to whether a married woman can charge her separate estate by oral contract. The better opinion is that where it consists of real estate the contract charging it must be in writing. (Clark v. Miller, 2 Atk. 379.) Where there is no express charge on her real estate, then

the intention to charge must be contained in the circumstances and facts of the transaction. That intention must be clear. (See Burch v. Breckinridge, 16 B. Monr. 482.)

Bliss, Judge, delivered the opinion of the court.

The plaintiffs seek to charge the separate estate of defendant Mattie Brown, a married woman, for goods sold her for her consumption. The goods, amounting to $145, were bought from time to time, and charged to her. She was introduced to the store as a woman of wealth, and, before this debt was contracted, had purchased several bills in her own name, which were always paid on presentation. This bill she promised to pay at different times, and after this suit was commenced asked for an extension of time, and agreed again to pay it. At no time — either when she was purchasing the goods embraced in this or other bills, or when they were presented in her own name, or when she had postponed at different times the payment of the one in controversy, either before or after the suit was commenced — did she make any allusion to her husband, or intimate that the goods were intended to be bought upon his account. The evidence is incontrovertible that the credit was given to her; that she purchased and intended to purchase for herself and with her own means, and the claim now set up that she intended to buy on the credit of her husband is clearly an after-thought. The plaintiffs sought to prove another fact, to-wit: the insolvency of the husband, and a very important one as bearing upon the main question, but were not permitted to do so. After the close of defendants' evidence the plaintiffs' salesman was recalled and asked whether he knew, at the time the debt in suit was contracted, what was the financial condition of Mr. Brown, and if so, whether he was solvent or insolvent? The question was objected to and ruled out, but the grounds of the objection were not stated. It might properly have been considered as out of time, as being part of the plaintiffs' case, although upon so material a point, and especially in an equity proceeding, it would have been a wise exercise of its discretion for the court, even then, to have permitted the question to be put. It was perhaps, however, ruled out as not material to

the issue; if so, the court committed an error, for the known solvency or insolvency of the husband would have been a strong circumstance helping to show to whom the credit was given. It has another bearing upon a point hereafter considered, as showing whether or not these goods were necessaries adapted to the condition of the wife, and which the husband was unable to furnish; for, if he could not do so, so much the more would the wife look to her own separate estate for their supply.

The defense is threefold: first, that Mrs. Brown did not intend to charge her separate estate; second, the goods being necessaries which the husband was bound to furnish, it could not be so charged; and third, that it could not be charged by a verbal agreement.

Upon the question of intention, the preponderance of evidence is altogether in favor of the plaintiffs' claim; and if the insolvency of the husband had been shown, it would have been overwhelmingly so. The only contradictory evidence is in the testimony of Mrs. Brown. She says she did not intend to charge her separate estate, but did intend to charge her husband, and that what she bought were necessaries adapted to her condition in life; but she admits that she bought them in her own name, saying nothing about her husband; that he had been absent about two years, and that she lived from the rents of her own property, and states facts from which we infer that she lived in expensive style. If it had also appeared that her husband was insolvent and unable to pay the bills thus contracted, she would have made against herself a strong case of attempted fraud.

In contracting a debt it is not necessary that the wife say anything about her estate, or even that she have it specially in mind. The question is whether the contract was her own or that of her husband. If she make it for herself, in her own name, then her intention is presumed unless her acts at the time — as by the giving and acceptance of some other security in lieu thereof — show the contrary. A promissory note would clearly establish the contract to be hers; but if she furnish no such evidence, the fact that it was her own contract must be otherwise shown, and, when shown, the intention follows. Mrs. Brown's declaration,

that she did not intend to charge her separate estate when running up a bill in her own name and upon her own credit, would not release her estate from the charge thereby created.

The law upon this subject has been often and fully discussed by members of this court, and it has always been held that, as to her separate property, a married woman is to be regarded as a *femme sole*, and is competent to make contracts or contract debts that shall bind it in equity, whether such property be named or referred to or not. (Coates v. Robinson, 10 Mo. 457; Whitesides v. Cannon, 23 Mo. 457; Tuttle v. Hoag, 46 Mo. 38; Schafroth v. Ambs, *id.* 114.) In Kimm v. Weippert, 46 Mo. 532, the circumstances were held to rebut the presumption of intention. The practical question, then, is not whether the *femme covert* expressly designs to charge her separate property, but whether she intends to contract a debt of her own; for if she does so, the law, and not her ideas about her property, fixes the liability. If she contracts upon her own credit, it is the credit of such property, for she has no other. This is antagonistic to the doctrine of the South Carolina cases, to some recent decisions in New York and elsewhere, but has long been the settled doctrine of this court.

Secondly, it is claimed that this rule can not apply to the purchase of necessaries which the husband should furnish. Whether the articles purchased are necessaries or not, is to be considered. The wife has a right, without her husband's consent, to charge him with their purchase, and this right may help to remove a doubt whether she was purchasing upon her own credit or his. But if she should give her own promissory note for the goods, I do not imagine that her right to buy in his name would make that note his contract, nor if the consideration were expressed in the note would it be any the less her agreement. Nor do I imagine, if the goods were simply billed, their character would conclusively show to whom the credit was given. In an action against the husband, the right of the wife to bind him would be very material; but as against her property, if it clearly appears that the credit was solicited by her for herself, and given to her, her husband being unknown in the transaction, it does not matter

whether he ought to have furnished the goods, or whether she could have availed herself of his credit if he had any.

This claim would defeat the chief object of marriage settlements. Kent (2 Com. 165), in speaking of them, says they "are benignly intended to secure to the wife a certain support in every event, and to guard her against being overwhelmed by the misfortunes or unkindness or vices of her husband." Suppose, for either of these reasons, the husband fails to provide for her support, is she to be deprived of the power to charge her estate to supply herself? She may become surety for her husband, may execute her note or bill to raise money for a hazardous speculation, or for frivolous amusement, but if she be in need of the necessaries of life for herself and children, she is shorn of credit, because her husband should furnish them; and as a result, if he can not or will not do so, and has no credit of which she can avail herself, she must go without until she can convert her estate into money.

But there is no evidence that this debt was contracted for such necessaries as could be charged to the husband. The bill was not in evidence, and all that appears is that it was for "fine goods;" that it consisted of articles of female apparel, and the only item named was a lace veil. Mrs. Brown testifies that part of the goods were for her children, and says "they were all necessaries incident to my condition in life." If this were so — if she were wealthy and bought goods suitable and necessary for her maintenance in a style warranted by her own means — it by no means follows that they were warranted by the estate of her husband, for "it is to be observed that, in estimating what are necessaries for the wife, no account is to be taken of the fortune brought by her. The jury must regulate their verdict (in a case against the husband) by the circumstances of the husband when the articles were supplied." (Clancy on Rights of Husband and Wife, 51.) Much less is her fortune to be considered if she really brings him nothing, but holds everything to her separate use. Even if this defense were a good one, her necessities, the character of the goods, and his ability to supply them should have been made to appear; but we are left in the dark upon all these subjects.

Upon the third point, it has been held by many courts that the wife's realty can not be charged for a liability not evidenced by a writing, while others repudiate any distinction in that regard between a written and parol agreement. These opposite views are consistent with the different theories upon the general question adopted by different courts; and in order to decide which view is correct, we must fix upon some principle as a guide to our steps.

The two leading theories are, that as to her separate estate the wife is a *femme sole;* that she may contract debts as though unmarried, for the payment of which her property is holden; and upon this theory it can not matter whether the debt be evidenced by a written instrument or not, if it is established to be her debt. The other theory is that the grant of a separate estate does not give the wife a general credit based upon it, but simply a right of disposition — a power of appointment uncontrolled by the husband — and she can only execute the power in accordance with its terms. Most of the opinions sail between these two theories, now tacking toward one and then the other; but unless the whole subject shall be rendered obsolete by the complete enfranchisement of married women in regard to their property and power of making contracts, through the adoption of the doctrines of the civil law, one or the other of these theories must ultimately prevail with all its logical results. Missouri, as we have seen, has adopted the first theory, and no case has yet arisen where its legitimate corollaries have been denied. The general doctrine elaborated in Whitesides v. Cannon has always been followed, and it is there held that the wife has not only an alienable estate independent of her husband which she may "dispose of as a *femme sole* owner, but that she has also the other power incident to property in general — the power of contracting debts to be paid out of it — and that, as her creditors have no means at law of compelling the payment of these debts, equity will subject her separate property to that purpose." The judge who delivered the opinion in Kimm v. Weippert, 46 Mo. 532, after an elaborate review of the cases, expresses his dissatisfaction with the position taken by Judge Leonard, although followed in all the other cases; but I did not then, and do not now, understand him as declining

to be governed by the doctrine of that case, especially after its so recent affirmance in Schafroth v. Ambs. In Kimm v. Weippert the husband and wife had purchased certain real estate, paid a part of the purchase money, and to secure the balance executed notes and a deed of trust upon the property. After the lots were sold under the trust deed, and a portion of the notes were left unpaid, the plaintiff discovered separate property of the wife, and sought to subject it to the payment of the balance; but the court held that the trust deed was the " only security intended or thought of by the parties, and that there was no design of charging the separate property of the wife," a conclusion entirely consistent with Whitesides v. Cannon, for she and her husband furnished a special and what should have been an ample security to meet her liability. I concurred in that opinion, and I might add that if I were giving private impressions as to what the law should be upon this subject, I should not find it difficult to show results under either theory that, under some circumstances, seem to defeat the supposed object of the creation of such estates, and to suggest modifications more in accordance with my own speculations. But too great confusion in the law upon this subject has already arisen from the attempts of learned chancellors to develop their own ideas, and I feel chiefly concerned to ascertain and declare what is the law as established.

Adhering, then, to the law as settled in Missouri, is there any reason in holding that the wife's indebtedness, in order to charge her real estate, must be evidenced by a written instrument? It is claimed that to hold otherwise would be contrary to the statute of frauds. But it will be at once seen that this view is based upon the theory that a grant of land to the separate use of the wife is but a power of appointment, and that every debt contracted by her is, so far, an execution of the power. If this were so, it might do to say that the execution of the power must be in writing. But the doctrine is a fiction. A promissory note in itself can not operate upon land, and has no more reference to or bearing upon the realty than any debt. If this fiction be warranted by the doctrine held in some States, it is antagonistic to that of Missouri. Our courts have never based the liability of the wife's

estate upon any such idea, but subjected it upon the same ground
that all property is subject to the payment of its owner's *debts*,
with this difference: that, owing to the general inability of the
wife to contract, the claim is directly upon the property, which
can not be reached by a personal action.   Thus the reason based
upon the appointment theory has no force with us.

Wherever the doctrine of Whitesides v. Cannon is held, the
difference between a written and a parol promise is necessarily
ignored.   In Murray v. Barbe, 3 Mylne & Keen, 209, Lord
Brougham, in speaking upon this point, says: "I own I can
conceive no reason for drawing any such distinction.   If, in
respect of her separate estate, the wife is in equity taken as a
*femme sole*, and can charge it by instruments absolutely void at
law, can there be any reason for holding that her liability, or,
more properly, her power of affecting her separate estate, shall
only be exercised by a written instrument?   Are we entitled to
invent a rule, to add a new chapter to the statute of frauds — to
require a writing when that act requires none?   Is there any
equity reaching written dealings with the property which extends
not also to dealings in other ways, as by sale and delivery of
goods?   Shall necessary supplies for her maintenance not touch
the estate, and yet money furnished to squander away at play be
a charge upon it if fortified by a scrap of writing?   No such
distinction can be taken upon any conceivable principle."   The
force of this reasoning, as applied to our interpretation of the
law, is not impaired by the subsequent opinion of Lord Cotten-
ham in Owens v. Dickinson, 1 Craig & Ph. 58, and quoted in
part in Kimm v. Weippert, for the reason that he denies the
whole doctrine of Whitesides v. Cannon, to which we adhere.
Judge Story, while leaning to the doctrine that the general
indebtedness of the wife will not charge her separate estate,
acknowledges (Com. on Eq., § 1400) that the reasoning that
would hold it liable for her bond or note would equally apply to
all her general pecuniary engagements.   So, in Ozley v. Skel-
heimer, 26 Ala. 332, the court holds "that a *femme covert*, as to
her separate estate, can enter into contracts in the same manner
as a *femme sole*, and that her contracts, whether written or

verbal, are equally binding, and do not operate upon the principle of appointments." In none of the Missouri cases did the court consider whether there was a distinction between a written and a parol agreement, although in all — to one as the other — the reasoning would apply as well.

Yet there is this difference: when the wife places her own name to a written instrument she can not deny that it is her agreement; but when charged upon a parol promise, there is room for doubt; and in a sale of goods the creditor should be required to establish affirmatively that they were purchased upon the sole credit of the wife; for the presumption would be, unless the contrary appears, that when the wife purchases articles of personal and family consumption, she does it upon the credit of her husband.

In order to liquidate this claim it will probably not be necessary to sell any property of Mrs. Brown. The judgment will be reversed and the case remanded, with directions to the Circuit Court to ascertain the income from the several lots described in the petition, and if the debt can be satisfied from such income within a reasonable period, to place one or more of them in the hands of a receiver with directions to collect the rents until a sufficient amount shall be received to pay the plaintiff's claim, the costs of the suit, and his compensation, to be fixed by the court.

Judge Currier concurs. Judge Wagner expresses no opinion.