WHITESIDES, Plaintiff in Error, v. CANNON & WIFE, et al., Defendants in Error.

1. Where a trust is created for a married woman's separate use without more, she has an alienable estate independent of her husband, which she may dispose of as a *feme sole* owner; she has also the power, incident to property in general, of contracting debts to be paid out of her separate estate.

2. A married woman executed a promissory note jointly with her husband; *held*, although it did not appear on what account the note was executed, whether for the benefit of the wife, or of the husband, or for their joint benefit, that equity would subject real estate held to the separate use of the wife to the payment thereof, and would decree a sale of the same.

*Error to St. Louis Land Court.*

The petition sets forth substantially that on the 7th of January, 1853, J. M. Cannon, one of defendants, without any

| 23 | 457 |
|----|-----|
| 96 | 28 |
| 23 | 457 |
| 35a | 204 |
| 23 | 457 |
| 104 | 47 |
| 23 | 457 |
| 45a | 28 |
| 46a | 348 |
| 23 | 457 |
| 151 | 10 |
| 23 | 457 |
| 160 | 367 |

valuable consideration, conveyed to his wife, Ann F. M. Cannon, certain real estate, "for her sole and separate use and benefit;" that on the 18th day of May, 1853, Louis C. Smith conveyed a tract of land in St. Louis county to L. M. Shreve, also a party defendant to this suit, "in trust for the sole, separate and exclusive use and benefit of the defendant Ann M. F. Cannon, apart from any control whatever of her husband;" that on the 6th of June, 1853, Cannon and his wife executed their certain negotiable promissory note, whereby they promised to pay plaintiff, six months after date, the sum of $1590; that "at the time of the execution of the said note, the said Ann was, and still is, the wife of the said John M. Cannon; and by the execution of said note, she became bound and liable to pay the contents thereof to the plaintiff, and thereby then and there by law pledged her separate estate for the security of the payment of said note, and by means thereof the plaintiff acquired and still has a lien on her separate property." Plaintiff prayed judgment for the amount of the note, and "that the said several parcels of land above described, or as much thereof as may be necessary to satisfy the said note, with the interest and costs, may, by the judgment of this court, be sold to pay said note, with interest and costs."

The answer, admitting the making of the note, denies that Mrs. Cannon "has by any act of her own, nor has she by law pledged her separate property to the payment of said note, or that plaintiff has any lien on her separate property."

The cause was submitted to the court upon the petition and answer, and the court found the facts as follows : "By the admissions of the answer the court finds that it is true, as stated in the petition, that the defendant Ann F. M. Cannon was, and is, the wife of the defendant, John M. Cannon; that she held and holds as her separate property the real estate mentioned in the petition as therein stated; that she joined with her husband, John M. Cannon, in executing the negotiable note mentioned in the bill for $1590, as stated in the bill; and that said note remained unpaid at the time of the commencement of this suit.

In view of the truth of all these facts, it is the conclusion of the court that the plaintiff is not entitled to the remedy he seeks by his petition, and can not have a decree to charge the separate estate of Mrs. Cannon with the payment of the said note." The petition was dismissed.

*Glover & Richardson*, for appellant, cited Bell on Law of Property, 518, 516 ; Norton v. Turville, 2. P. Will. 144 ; Peacock v. Monk, 2 Ves. sr. 193 ; Hulme v. Tenant, 1 Brown Ch. 14 and note ; Jaques v. Meth. Epis. Church, 17 Johns. 581 ; 4 Porter, 44 ; Sadler et al. v. Houston, 4 Porter, 208 ; Long v. White, 5 J. J. Marsh. 230 ; Sanford v. Marshall, 2 Atkins, 69 ; Murray v. Barbe, 3 My. & K. 220 ; 15 Ves. 599 ; 4 Russ. 112 ; 2 Roper on Hus. & Wife, 246 ; 2 Story's Eq. §§ 1400, 1401 ; Clancy on Rights, 346 ; Coates et al. v. Robinson, 10 Mo. 757 ; 1 Craig & Phil. 48 ; Gardner v. Gardner, 22 Wend. 528 ; Smart v. Kerwall, 3 Mod. 200.

*L. M. Shreve*, for respondent.

I. In equity the estate of a married woman can not be held bound for debts contracted by her unless she *intended* to bind her separate estate, or the debt was for her use and benefit. (Wilson v. Cheshire, McCord's Ch. R. 241.) The bare execution of a note by a *feme sole* would not create a lien upon her property. (Sugden on Powers, 110.) The petition in this case alleges nothing against Mrs. Cannon but the bare fact that she, along with her husband, made the note sued on. Nothing is stated tending to show that in fact the note had any relation to the property ; and, for aught that appears in the case, Jno. M. Cannon, the joint maker of the note, is able and willing to pay the note, and is liable in law to pay it. At most, Mrs. Cannon is but security.

LEONARD, Judge, delivered the opinion of the court.

The question here is, as to the liability in equity of a married woman's separate estate to the payment of her debts. This species of property, whether in things real or personal, is ex-

clusively the creature of a court of equity; and before we express our opinion on the question now before us, it may not be out of place to refer to its origin, gradual development and present state in English equity law.

Whenever a trust is created, the property affected by it is subjected to a double ownership—the legal ownership in the trustee, and an equitable ownership in the *cestui que trust*—the latter, although in strictness a mere equitable right to a specific execution, being considered in equity as the estate itself. But this equitable property is governed generally by the same principles that are applicable to legal estates. The terms in which the trusts are declared are interpreted by the ordinary rules of law, and the equitable ownership subjected to the same restraints as the legal property. To this latter rule, however, two exceptions have been allowed, both having reference to married women—one in what are called the separate use and pin-money trusts, which enable married women to acquire and enjoy property independent of their husbands, and allow such property to be made inalienable—and the other, in the wife's equity for a settlement, which restrains the husband's marital rights over her equitable chattels, real and personal choses in action, until an adequate settlement has been made. The purpose of the separate use trust was to exclude the rights of the husband, and to secure the property to the wife during coverture; and the effect of it was, to enable a married woman, in direct violation of common law principles, to acquire and enjoy property independently of her husband, and to enter into contracts, and incur liabilities, in reference to such property, and to dispose of it as a *feme sole*, notwithstanding her coverture and consequent disability at law; in a word, it created a new species of estate unknown to the common law, and in direct violation of its principles—a separate estate in the wife, free from the husband's rights, and subject to her disposition as a *feme sole*. Two opinions seem to have prevailed as to the wife's power of disposition over it—one, that she was to be regarded in equity as a *feme sole* owner, with all the powers of

disposition incident to the ownership of property, unless expressly restrained in her control over it by the instrument of gift—and the other, that she was only entitled to the fruits of the property during coverture, and had such power of disposition as was expressly conferred upon her by the instrument creating the estate. The first opinion seems to have prevailed in England from the origin of this species of property until the end of the eighteenth century, or at least until Lord Thurlow retired from office in 1792; and it is said that the only case during this whole period in which this doctrine was denied, is the case of Hulme v. Tenant, (1 Bro. C. C. 16,) to be hereafter more particularly referred to, when the bill, upon its first hearing before Chancellor Barthurst, was dismissed; and a reference to a few of the cases will illustrate the principle that prevailed in equity upon this subject during all this time. The first case of any importance is that of Norton v. Tuberville, (2 P. Will. 144,) decided in 1723, where a married woman, with a separate estate, had borrowed money and given her bond, and it was objected that her bond, she being a *feme covert*, was void at law, and that then the money vested as a loan, and was barred by the statute of limitations. But it was decided that, although the bond was so far void as not to be suable at law, it was valid as a charge against the wife's separate estate. In Stanford v. Marshall, (2 Atk. 68,) decided in 1740, a father had created a trust of real estate, and directed the rents and profits to be paid to his daughters, whether sole or covert, for their separate use, either into their own hands or into those of any other person whom they might appoint. The daughters joined their husbands in bonds for money loaned to the latter; the trustees refused to pay, and the creditors brought a bill to have the rents and profits of the real estate applied to the payment of their debts, and it was so decreed, the court saying that the daughters had an absolute power over the rents and profits, and could create any lien they pleased upon their interest in the estate. In Grisby v. Cox, (1 Ves. sen., 517,) decided in 1750, an estate was settled, upon the marriage of a

lady, in trustees, to receive the rents and profits for her separate use, and as she should appoint, whether sole or covert. The wife, by deeds of appointment, sold part to the plaintiff, and the husband covenanted that the purchase should be free from encumbrance. A bill was filed by the purchaser to have the effect of this bargain. The chancellor said, it was impossible not to decree for the plaintiff; that the rule of the court was, that, where any thing was settled to the wife's separate use, she was considered as a *feme sole*, and might appoint in what manner she pleased, and that the wife might have made an immediate appointment for the benefit of her husband, unless there were proofs of undue influence over her by ill-treatment, or even by extraordinary kind treatment. In Cartney v. Newman, decided in 1771, (3 Brown's C. C. 646, note,) a legacy had been given to the wife for her separate use, with a power of appointment by will, and, in default of appointment, to her executors; and it was ordered, upon her consent, to be paid to her husband, although this was a palpable departure from the mode of appointment pointed out in the instrument of gift. In Hulme v. Tenant, before referred to, decided in 1778, the wife's freehold and leasehold estate, on her marriage, were conveyed to trustees to receive the rents and profits for her separate use, and to convey the same to such use as she should appoint by deed or will under her hand and seal, and, in default of appointment, to her heirs and executors. The husband borrowed money and gave his bond, in which his wife joined, and so for a second sum, which the wife herself applied for, and the bill was filed by the obligee against the husband, wife and trustee, for payment out of the separate estate, to which there was no reference in the original transaction. The case was much considered, and is a leading case upon the subject, and, upon a rehearing before Lord Thurlow, the personal estate, and the rents and profits of the real estate comprised in the trust, were ordered to be applied to the payment of the debt. The chancellor went through with the decided cases, and declared that the correct rule was laid down in Peacock v. Monk, by Lord Hardwicke, that a *feme covert*,

acting with respect to her separate property, is competent to act in all respects as if she were a *feme sole*. He said that if the wife enter into an engagement that would render her liable, if *sole*, to the whole extent of her contract, as to her person, such engagement will not bind her as such, but that it would operate upon her separate personal property and the rents and profits of her real estate, and that her trustees would be compelled to apply them accordingly; and that the principle was, that if a court of equity says a *feme covert* may have a separate estate, the court will bind her to the extent of making that estate liable to her engagements, such as the payment of debts, &c. Afterwards, in Pybus v. Smith, (3 Brown's C. C. 340,) the same chancellor said, that, "if the point were open, he should have thought that a *feme covert*, who had a separate estate, could not part with it without an examination in court. But if a *feme covert* sees what she is about, the court allows of her alienation of her separate property, and her conveyance of the whole to pay her husband's debts will be carried into effect. If a parent intended to give a provision in such a way that she could not alienate it, he saw no objection to its being done, *but such an intention must be expressed in clear terms.*"

Afterwards, from the case of Sockett and wife v. Wray, (4 Bro. C. C. 483,) decided in 1793, until we come to the case of Parker v. White, (11 Vesey, 209, 237,) decided by Lord Eldon in November, 1805, the judges, struck, it seems, with the facility of wives to the wishes of their husbands, and anxious to protect them against their own indiscretion, seem to have struggled to establish the doctrine that the wife had only such power over her separate estate as was expressly conferred upon her; and in the cases of Socket and Wray, before referred to, Hyde v. Price, (3 Vesey, 437,) decided in 1797, Whistler v. Newman, (4 Ves. 129,) decided in 1798, Sperling v. Rochfert, (8 Ves. 164,) decided in 1803, Wagsloff v. Smith, (9 Ves. 520,) decided in 1804, and Richards v. Doull, (10 Ves. 580,) decided in March, 1805, they express their disapprobation of the previous cases, and endeavor to restrict the power

of the wife over her separate property within the authority expressly conferred upon her by the terms of the settlement. But in the case of Parker & White, before referred to, the court return to their original doctrine, in reference to the matter now under consideration. There, the wife's freehold and copyhold estates were conveyed to trustees, to allow her to receive the rents and profits for her sole and separate use, free from the debts of her husband; and after her decease, to be subject to the dispositions of her will; and in default of a will, to the children of the marriage; and in default of issue, to the use of the heirs of the wife. The wife joined her husband in conveying her life estate and the reversion in fee, the husband receiving the money; but she afterwards filed a bill to be relieved against this disposition of her separate property, as obtained from her by the influence of her husband and without any valuable consideration. The case was determined by Lord Eldon, who, in delivering his opinion, made the following remarks: "The first question is, what could the wife lawfully do with her estate? It is extremely important that this question should be once for all well settled. My mind is in great distraction upon that subject. If it be asserted that, though Lord Thurlow, following his predecessors as far back as the doctrine can be traced, repeatedly decided upon this principle, the court has now a right to refuse to follow it, I am not bold enough to act upon that position. Upon principle, a woman contracting marriage loses all the powers she had as a *feme sole*, and yet this court allows her to place herself, by contract, in the situation of a *feme sole*. Lord Thurlow said, upon true principle, that, if the contract makes her a *feme sole*, her faculties, as such, and the nature and extent of them, are to be collected from the terms of the instrument making her such. In Pybus v. Smith this court exerted all its providence; the trustees were to receive the dividends, and from time to time pay them into the proper hands of the wife; receipts to be given from time to time, &c. Notwithstanding all that was expected in Pybus v. Smith, Lord Thurlow felt himself bound by authority to say,

those words have no more effect than to create, in the view of this court, a separate interest of the wife in the property. The principle therefore is, that all these words are only an unfolding of all that is implied in a gift ' to the separate use.' Lord Thurlow made the decision in Pybus v. Smith with great reluctance, thinking the act proposed most unrighteous. But he looked back to the authorities, and found that he had occasion to consider the subject very much as in Hulme v. Tenant. In that case there was a very formal creation of a limitation to a separate use. The wife executed no formal instrument, but she put her name to a bond together with her husband. It was an absolute nullity, except as a paper with reference to which her intention was supposed to be stated. Lord Thurlow, however, thought himself bound by authority to say, as she could have had no other intention than to charge her separate estate, that informal instrument was such a charge ; and he, by decree, executed that intention, recurring back to all the cases in which informal acts of different sorts had been held a sufficient declaration of the wife's intention. Then came the case of Whistler v. Newman, upon which it does not become me to make any other remark than that, when the present cause comes on to be argued again, it must be considered how far that case is consistent with preceding authorities ; and if it is not, then whether it was competent to the court, in that year, to refuse to make a decree *consistent with all the declarations of this court for a century.*" Since this decision, the original doctrine of the court has, it is believed, been very uniformly asserted and acted upon in all the subsequent cases down to the present time.

Whenever it is thought desirable to protect the wife's separate property against the influence of her husband, it is effected, in English settlements, by inserting a clause prohibiting anticipation or alienation ; and we remark, in reference to this provision, that, when courts of equity first established the separate use trust, they violated the laws of property as between husband and wife ; but it was thought beneficial, and prevailed. When,

however, it was settled that a wife might enjoy her separate es-
tate as a *feme sole*, the laws of property attached to this new
estate, and it was found, as part of such law, that the power
of alienation belonged to the wife, and endangered the security
intended.   To protect the separate estate therefore against the
influence of the husband, the clause against alienation or anti-
cipation was introduced, and, although it is an established rule
of property, in equity as well as at law, that all restrictions
inconsistent with the nature of estate given are void, (Brandon
v. Robinson, 18 Vesey, jr., 429,) yet equity here again inter-
fered, and, by another violation of the laws of property, estab-
lished the validity of the prohibition against alienation in cases ,
where the settlement was upon a female under coverture at the
time.   The question then arose, whether the operation of the
prohibition was confined to the existing coverture, or might be
extended to any future marriage.   It was admitted that dur-
ing the discoverture the clause was void, and that up to the
moment of the marriage the woman's ownership was absolute,
the law making no distinction between males and females in
this particular ; but it was finally settled as late as 1840, in
Tullett v. Armstrong, (1 Beavan, 1, 4 Mylne & Craig, 390,)
that, upon a subsequent marriage, the separate estate arose
qualified by the clause against alienation ; and in this case,
which was affirmed on an appeal, the Master of the Rolls sta-
ted the whole equity law upon the subject in the following pro-
positions :  "Property, given to a woman for her separate use,
may, under the authority of a court of equity, be enjoyed by
her during her coverture as her separate estate, although the
property originally, or at any subsequent period or periods of
time, became vested in her while discovert."   "In respect of
such separate estate, she is considered, in equity, as a *feme
sole*, although covert.   Her faculties as such, and the nature
and extent of them, are to be collected from the terms in which
the gift is made to her, and will be supported in equity for her
protection."   "If the gift be made for her sole and separate
use, without more, she has an alienable estate independent of

her husband." "If the gift be made for her sole and separate use without power to alienate, she has, during coverture, the present enjoyment of an unalienable estate independent of her husband." In either of these cases she has, when discovert, a power of alienation; the restraint is annexed to the separate estate only; and the separate estate has its existence only during coverture. Whilst the woman is discovert, the separate estate, whether modified by restraint or not, is suspended, and has no operation, though it is capable of arising upon the happening of a marriage." And we remark in reference to the liability of the separate estate to the wife's debts, that, although Story (2 Equity Com. § 1407, 3d ed.) says, "In the earlier cases, the doctrine was put upon the intelligible ground that a married woman is, as to her separate property, to be deemed a *feme sole*, and that therefore her general engagements, although they would not bind her person, should bind her separate property; but this, however, is not the modern doctrine, for by that it seems to turn upon the intention of the married woman to create a charge upon her separate estate, either as an appointment, or as a disposition of it by a contract in the nature of an appointment;" yet the more recent cases, decided since this separate use trust has been now thoroughly investigated, reëstablish the ancient doctrine. (Murray v. Barbee, 3 Mylne & Craig, 223; Owens v. Dickerson, 1 Craig & Phillips, 55.) In the latter case, which was decided in 1850, the chancellor, speaking of a paper by which a married woman acknowledged her indebtedness upon a certain condition, said: "Now that document alone, within the authority of cases which have been decided, would have been operative upon her separate estate, but not by way of the execution of a power, although that has been an expression sometimes used, and, as apprehended, very inaccurately used, in cases where the court has enforced the contracts of married women against their separate estate." "It is quite clear therefore that there is nothing in such a transaction which has any resemblance to the execution of a power. It has some times been treated as a dis-

position of the particular estate, but the contract is silent as to the separate estate; for a promissory note is a mere contract to pay, not saying out of what or by what means it is to be paid. Equity lays hold of the separate property, but not by virtue of any thing expressed in the contract. The view taken of the matter by Lord Thurlow, in Hulme v. Tenant, is more correct. According to that view, the separate property of a married woman being a creature of equity, it follows that, if she has a power to deal with it, she has the other power incident to property in general, namely, the power of contracting debts, to be paid out of it; and, inasmuch as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property as the only means by which they can be satisfied." The present doctrine upon the subject is also laid down to the same effect in Adams on Eq. (p. 45,) before referred to. ' "In the absence of any fetter on anticipation, the wife has the same power over her separate property as if she were unmarried. Her disability to bind herself or her general property is left untouched, but she may pledge or bind her separate property, and the court may proceed *in rem* against it, though not *in personam* against herself. In order that the separate property may be thus bound, it is not necessary that she should execute an instrument expressly referring to it, or purporting to exercise a power over it. It is sufficient that she professes to act as a *feme sole*."

We now turn to the American cases upon this question. The first case in which it was discussed is Ewing and others v. Smith and others, (3 Dess. 420,) which occurred in South Carolina in 1811, and was decided upon appeal by the five chancellors of the state. The trust estates were secured to the separate use of the wife, with power in the wife to dispose of them by will. The husband contracted the debt partly for the use of the trust property, and the wife afterwards joined in a bond with her husband to secure its payment. The bill was filed by

the creditor to subject the separate property to the payment of the bond, and the relief asked was refused. Three of the judges held that the separate use trust did not confer upon the wife any power of disposition over the property as a *feme sole;* that she had only such power in this particular as was expressly conferred upon her by the settlement; and that, when a particular mode of exercising the power of disposing was given, that excluded all others, and must be strictly pursued. The other two were of opinion that the wife was a *feme sole* in reference to this property, and could exercise as such all the powers incident to the ownership, and that her bond, even if for the husband's debt, was a valid charge in equity against her separate property. The case was very elaborately considered, and Chancellor Dessausure, who dissented from the majority, went through all the English cases upon the subject. The opinion of the majority however has been steadily adhered to in South Carolina, and in Reid v. Lamar, (1 Strobh. Eq. 27,) decided in 1845, Chancellor Harper declared that the wife could "in no manner of respect be considered a *feme sole.* A *feme sole* disposes of or charges her property by her own act, and according to her own will, by her inherent power as owner. A *feme covert* exercises a delegated authority and can not exceed it." And the doctrine of the South Carolina case has been followed in Pennsylvania (Thomas v. Folwell, 2 Watts, 11 ; Wallace v. Costan, 9 Watts, 137 ; Lynes' Exec'r v. Cranse, 1 Barr, 11), in Tennessee (Morgan v. Elam, 4 Yerger, 375, and Marshall v. Stephens, 8 Humph. 159), in Mississippi (Montgomery v. Agricultural Bank, 10 Smedes & Marsh. 567, and Doty v. Mitchell, 9 id. 435), and in Virginia (Williamson v. Becklam, 8 Leigh, 20–27).

The question also came up and was fully discussed in the courts of New York in 1817, in the case of the Methodist Episcopal Church against Jaques, first heard before Chancellor Kent, and subsequently on appeal in the court of errors (3 Johns. Ch. R. 77–78). The trusts were to such persons and uses as the wife, with the concurrence of her husband, should by

deed, or by will without his consent, appoint, and the question was as to the validity of certain parol dispositions in favor of the husband that the wife had made during coverture. The chancellor (Kent), after reviewing all the English cases, came to the conclusion that they were so contradictory as to leave the court at liberty to adopt the true principles of such settlements, which he declared to be, that the wife, instead of being a *feme sole*, to all intents and purposes, in reference to her separate property, was such only to the extent of the power clearly given to her by the settlement, and to be exercised only in the mode prescribed ; that her incapacity was general, and the exception to be taken strictly, and to be shown in every case, because it was against the general policy. This judgment, however, was reversed in the court of errors, with the concurrence of all the judges, and, after a thorough investigation of the question, both upon principles and authority, the English rule adopted, that the wife must be considered as a *feme sole* owner, with the usual power of alienation, unless expressly restrained, and that the prescribing of a particular mode of disposition did not exclude the other mode allowed by law ; and this doctrine is still adhered to in that state. (*Dyett v. N. A. Coal Co.* 20 Wend. 370 ; *Vanderheyden v. Mallory,* 1 Comst. 462; *Yale v. Dederer,* 21 Barb. 289, decided in August, 1855.) The same doctrine has been adopted and followed in North Carolina (*Harris v. Harris,* 7 Iredell Eq. Rep. 112, decided in 1850), and in Kentucky (*Bell & Terry v. Keller,* 13 B. Mon. 384, decided in 1852); and in Alabama the tendency of the course of decisions seems to be in the same direction (*Forrest v. Robinson,* 4 Porter, 44).

We have looked through the reports of all the states, and find no other cases settling this question; and the result to which we have come, after a careful consideration of the whole subject, is, that if the trust be for the wife's separate use, without more, she has an alienable estate independent of her husband, which she may dispose of as a *feme sole* owner ; and that she has also the other power incident to property in general, the

power of contracting debts to be paid out of it, and that, as her creditors have no means at law of compelling the payment of these debts, equity will subject her separate property to that purpose. In the Roman law it seems that husband and wife were treated as distinct persons in reference to their rights of property, and the same principle seems to prevail in the continental states of Europe. It is otherwise however in the common law ; there, husband and wife are considered as one person, the very existence of the wife being as it were merged during coverture in that of the husband. And it is supposed that the construction we propose giving to a settlement creating separate property in the wife is against the policy of our law, and contrary to our social institutions. It has however been well remarked, that it might perhaps have been insisted that the *allowance of separate property in a wife* was against the policy of the common law and the habits of our domestic institutions ; but that is too firmly established to be at all questioned at this time, and is quite a different question from the present. The wife's separate estate being allowed, the question here is as to the meaning of the instrument creating the interest ; and this does not touch the policy of the law, or the social institutions of the country, since it is admitted on all sides that the parties may by express provision confer or restrain the disposing power of the wife during coverture. Such being the true nature of the question, we think the rule originally adopted, and to which the modern decisions are returning, is most conformable to the analogies of the law of property, the simplest in its application to the affairs of life, and most likely to execute the real intention of the parties to these settlements ; and it is enough, we think, to restrain the owner in the exercise of the undoubted rights of property when the donor declares such to be his intention.

We might perhaps have considered this case as settled by Coates & wife v. Robinson & Hendley, (10 Mo. 757,) decided in this court in 1847. There, the trust was general to the separate use of the wife, without other words ; the debt was

contracted by the wife as a *feme sole* in the purchase of land for her own use; she united with her husband in a bond for the money, and the bill was filed by the creditor to have satisfaction of the debt out of the slaves that were the wife's separate property at the time the debt was contracted. The relief asked was given, and the judgment of the original court affirmed here on appeal, the judge, who delivered the opinion in the case, remarking: "It is well established by a current of decisions, both in England and in this country, that a *feme covert*, with respect to her separate property, is regarded in a court of equity as a *feme sole*, and that when she enters in agreements that indicate her intention to bind her separate property, such agreements will be effectuated, by the courts, unless they are characterized by fraud or some unfair advantage. Where the *feme covert* executes a bond or note, or accepts a bill, it is held that she must intend by such instrument to bind her separate estate, because these acts would otherwise be nugatory, and these instruments could in no other way have any validity or operation." This judgment is conclusive that the wife has the power of disposition as owner, where the separate property is created by general words, without any thing more, and that a bond or note in writing, given for her own debt, constitutes of itself that debt a charge against her property to be enforced in equity, and we were perhaps concluded by it to the extent to which the determination went. It was however the opinion of a divided court, and we therefore preferred reëxamining the question, which has resulted in satisfying us of the correctness of the opinion then entertained by a majority of the court.

We proceed to apply the conclusions to which we have come to the case now before us. The present trust was upon real property conveyed to a trustee for the sole and separate use of the wife, and the debt sought to be charged against it was a promissory note executed jointly by the husband and wife, but on what account, whether for the benefit of the wife, or of the husband, or for their joint benefit, did not appear; and upon a trial by the court, these facts being admitted by the pleadings,

and nothing further appearing, the court denied the relief asked, and dismissed the petition.

In the creation of this trust no negative words are used, nor is any particular mode of exercising the dominion of an owner over the property pointed out; and it may be remarked that Chancellor Kent, in his opinion in the case of the Methodist Episcopal Church v. Jaques, said : " Perhaps we may say, that, if the instrument be silent as to the mode of exercising the power of appointment or disposition, it intended to leave it at large to the discretion and necessities of the wife, and this is the most that can be inferred." The case of Coates & wife v. Robinson & Hendley, however, does not proceed upon any such narrow ground, and we do not wish to be understood as resting the present decision upon that distinction. It is enough that the instrument creating the trust has not expressly restrained the wife from exercising the full dominion of owner. Again, although in Mrs. Coates' case it appeared that the debt was contracted for the benefit of the wife, which is not shown here, we do not think there is any thing in that objection. Judge Story (2 Equity Com., 3d ed., § 1401) says : " If the wife gives a promissory note, or any acceptance, or a bond to pay her own debt, or if she joins in a bond with her husband to pay his debts, the decisions have gone the length of charging it on her separate estate, without any distinct circumstance establishing her intention." And such is the effect of the decision of the court in Mrs. Coates' case; for, although the debt there was created for her benefit, that circumstance was not at all relied upon. Indeed, the modern English doctrine upon this subject seems to go the full length of charging the debts of the wife upon her separate property, even without any written document, upon the ground that, being the owner, she has the incidental power of contracting debts to be paid out of it, without any specific intention on her part to create a charge against it. (Murray v. Barbee, and Owens v. Dickerson, before cited.) It is enough for the present case, however, that here there was

a written document, and whether the debt was for the benefit of the wife, or the husband, or for their common benefit, is not material.

Another remark and we conclude. In Hulme v. Tenant, Lord Thurlow, following the English law as to the liability of real property to the payment of debts, went no further than to charge the rents and profits of the real estate ; but we think the remedy, under our law, is by a sale, which ordinarily will be the most beneficial remedy for all parties in interest. In Maryland, in Tiernan v. Pool & wife, (1 Gill & John. 217,) the wife agreed to give a mortgage upon her separate real property, and it was insisted, that as, by the laws of the state, she could not convey or mortgage it without a privy examination, she ought not to be allowed to charge it by a mere agreement ; but the objection was disregarded, and her land subjected to the payment of the debt. And the same remedy, by a sale of the wife's real property, was allowed in the case of Yale v. Dederer (21 Barb. 290). Of course, a wife can not bind her legal estates during coverture except in the manner prescribed by law ; but over her own separate property, an interest existing only in the contemplation of equity, she has the power, both direct and indirect, of a *feme sole*.

Judge Ryland concurring, the judgment is reversed, and the cause remanded.