18 455
38 511
18 455
f46 245

WINKLER *v.* WINKLER'S EX'R.

Decided October 29, 1881.

1. At common law the husband was entitled to curtesy in ·all the real estate, of which the wife died seized, whether such estate was separate estate or not.

2. Section 15 of chapter 65 of the Code of 1868 as amended by section 2 of chapter 207 of the Acts of 1872-3, which provides: "If a married woman die seized of an estate of inheritance in lands, her husband shall be tenant by the curtesy in the same" does not dispense with any of the four common law requisites of curtesy: marriage, seisin of the wife, issue born alive and death of the wife, but is only declaratory of the common law.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Jefferson rendered on the 13th day of November, 1877, in an action of ejectment in said court then pending, wherein Jacob W. Winkler was plaintiff, and John J. Baney and D. B. Lucas, executor of M. A. Winkler, deceased, were defendants, allowed upon the petition of said Lucas.

Hon. John B. Hoge, judge of the third judicial circuit, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the Court.

*Daniel B. Lucas* for plaintiff in error relied upon the following authorities: 1 Black 459; Coke Inst. Book 1, p. 556; 1 Bouvier Law Dict. "Curtesy,"; 2 Blackst. Com. 126; Tyler Infancy and Coverture 399, 400; *Id.* 421, 528; 36 Miss. 175; 6 Allen 166; 56 Barb. 168; 14 N. Y. 151; 2 Yeates 374.

*Baylor & Wilson* for defendant in error relied on the following authorities; Acts 1872-3, ch. 207; Code of Va. (1860) ch. 110, § 1; *Id.* ch. 122, § 3; *Id.* ch. 123, § 1; Code ch. 66; 28 Barb. 343; *Id.* 633; Code, ch. 78, § 1; *Id. ch.* 65, § 15; *Id.* ch. 77, § 2; Code of Va. ch. 123, § 12; Code ch. 65, §§ 4, 5, 7, 16; Acts 1872-3, ch. 191; Wilkins Real Property 210; 6 Conn. 494; 8 Johns. 202; Reevis Dom. Rel. 91; Purdon Dig. 562, "Intestates" § 3; 2 Mich 93; 15 Mich. 60; 1 Cruise Dig. 217, "Jointure."

PATTON, JUDGE, announced the opinion of the Court:

Mary A. Manuel was the owner in fee of a house and lot in Charlestown, Jefferson county, West Virginia, and in 1873 intermarried with Jacob H. Winkler, by whom she had no issue born alive. She died in 1879, having first made her last will and testament, in which she makes no provision for her husband. Daniel B. Lucas, the executor of said will, took possession of the property and Winkler brought an action of ejectment in the circuit court of Jefferson county to recover the possession thereof, upon the ground that he was tenant by the curtesy in the same under the statute, notwithstanding the fact that there was no issue born alive during the coverture. The jury found for the defendant; but the court set aside the verdict and granted a new trial. From this action of the court the defendant obtained a writ of error and *supersedeas* to this Court.

The only question raised by the record in this case is, whether section 15, chapter 207, Acts of 1872–3, gives to the surviving husband a life-estate in all the lands of inheritance, of which the wife was seized, whether there was issue born alive during the coverture capable of inheriting the estate or not, or whether that section is only declaratory of the common law as to the husband's right to curtesy in the land of his deceased wife. Section 15 provides: "If a married

woman dies seized of an estate of inheritance in lands, her husband shall be tenant by the curtesy in the same." By the common law there were four necessary requisites to make a tenant by the curtesy : 1st. Marriage ; 2d. Seisin of the wife ; 3d. Issue ; 4th. Death of the wife. "Tenant by the curtesy of England is where a man marries a woman seized of an estate of inheritance, that is, of lands and tenements in fee simple or fee tail, and has by her issue born alive, which was capable of inheriting her estate. In this case he shall on the death of his wife hold the lands for his life as tenant by the curtesy of England." 2 Bla. Com. 126. By the common law Winkler would not have been entitled to the real estate as tenant by the curtesy, lacking one of the four necessary requisites to make a tenant by the curtesy— birth of issue. Has the statute then created in the husband a new kind of life-estate in the lands of inheritance, of which the wife dies seized, dispensing with the important common law requisite of "issue born alive, which was capable of inheriting her estate," thus giving to him a life-estate in the lands of his wife under circumstances, which do not contain the only substantial reason assigned at common law, why tenancy by the curtesy was created at all ? "For if a woman seized of lands hath issue by her husband and dies, the husband is the natural guardian of the child, and as such is in reason entitled to the profits of the lands in order to maintain it." 2 Bla. Com. 127.

In order to understand the true meaning and extent of this statute, if its words alone are not sufficiently plain to convey its meaning, it is necessary to examine the history of the various changes and alterations, which have been made in the statute-law of this State bearing upon this subject contained in the Code of 1868 and the Acts of 1872–3, and the law as it stood previous to any alterations as to curtesy in the separate estate of married women. In most of the States for many years there has been a growing purpose, as evidenced in the legislation of those States, to depart from the old common law principles as to the relative rights, which the husband and the wife each had in the property of the other ; to depart from the ideas, that the existence of the wife was merged in that of her husband ; that he was entitled to all her perso-

nal property absolutely, and to the rents and profits of her real estate immediately upon marriage, and upon the birth of issue for his life as tenant by the curtesy initiate, and upon her death as tenant by the curtesy consummate, and to treat the wife as to the property owned at the time of marriage, or which she might acquire by inheritance, gift, grant, devise or bequest after marriage as a *feme sole* free from the control of her husband in every respect, giving to her the right to enjoy and dispose of the same as fully, as if she were a *feme sole*, and on the other hand, while it deprived the husband of many, if not nearly all, of the rights he had in her estate at common law, it released him from many of the burdens imposed upon him in consideration of those rights, as the obligation to pay the debts of the wife contracted by her before marriage, although she had no estate whatever, out of which they could be paid.

This spirit first manifesting itself in Maine in 18.9, has spread through nearly all the States to a greater or less extent, until now there is scarcely a State, which has not shown a purpose to bestow upon the wife a more complete marital independence, to give her a more enlarged control of her own property, and to free her in a great measure as to her property from the burdens of coverture. In other words the purpose is manifested to place husband and wife in exactly the same attitude as to the interests and rights of each in the property of the other, to make them as separate and distinct as to each other's property, as if they were unmarried. "From this time forth," 1844, "the revolution became rapid and extended to nearly all the States, Virginia and Delaware constituting exceptions. Scarcely a year has passed within the last fifteen years without some new married woman's acts added to the local statute-books." Schouler's Domestic Relations 212.

In sympathy with this spirit the Legislature of West Virginia enacted the various provisions on this subject, which are found in the Code of 1868. By chapter 66 it was provided :

" 1st. All real and personal property heretofore conveyed directly to a married woman or to a trustee for her use, by any person other than her husband, as her sole and separate property, and the rents, issues and profits thereof shall be and

remain her sole and separate property as if she were a single woman, and the same shall in no way be subject to the control of her husband or liable for his debts.

" 2d. The real and personal property of any female, who may hereafter marry, and which she shall own at the time of marriage, and the rents, issues and profits thereof shall not be subject to the disposal of her husband nor be liable for his debts, and shall be and continue her sole and separate property, as if she were a single woman.

" 3d. Any married woman may take by inheritance or by gift, grant, devise or bequest from any person other than her husband, and hold to her sole and separate use, and convey and devise real and personal property and any interest or estate therein, and the rents, issues and profits thereof in the same manner and with like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband nor liable for his debts, provided that no married woman, unless she is living separate and apart from her husband, shall sell and convey her real estate, unless her husband joins in the deed or other writing by which the same is sold or conveyed.

" 4th. Any person holding, or who may hereafter hold, as trustee for any married woman any real or personal estate or other property under any deed of conveyance or otherwise, on the written request of such married woman, * * * * may convey to such married woman by deed or otherwise all or any portion of said property or the rents, issues or profits thereof for her sole and separate use and benefit."

5th. This section authorizes a married woman to insure the life of her husband for her own benefit.

7th. This section gives to a married woman the benefit of patents for her own inventions.

8th. This section provides for deposits in bank of her money and for checks in her own name upon it.

9th. This section authorizes her as a stockholder in any corporation other than mutual fire-insurance companies to vote by proxy or otherwise.

10th. This section exempts the husband from liability for the wife's debts contracted before marriage.

11th. This section provides, that any husband, who by ante-

nuptial contract or otherwise acquires his wife's separate property, shall be liable for her debts contracted before marriage to the extent of that property.

12th. This section provides, that a married woman may sue without joining her husband, 1. Where the action concerns her separate property ; 2. Where the action is between herself and husband ; 3. Where she is living separate and apart from her husband.

13th. This section provides, that while living separate and apart from her husband she may carry on any trade or business, and the fruits of such trade or business shall be her sole and separate property.

Chapter 78 of the Code section 1 provided : "When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his or her kindred male and female, as are not aliens, or to the husband or wife in the following course : I. To his or her children and their descendants. II. If there be no child, nor the descendants of any child, then to his or her wife or her husband, &c."

The 9th section provides in case of intestacy as to the personal estate, after the payment of funeral expenses, charges of administration and debts, one third of the surplus, if the wife leave children, shall go to the husband, and if she leave no children, then the whole of it. If the intestate was a husband the same provision is made for the wife, *mutatis mutandis.*

The 11th section of the same chapter provides, that where the husband makes a will, she may renounce the provision in her favor ; and if such renunciation be made, or if no provision be made for her in the will, she shall have such share of her husband's real and personal estate, as she would have had, if he had died intestate leaving children ; otherwise, she shall have no more thereof than is given her by the will; and if a wife makes a will, he may renounce the provision in his favor, and if such renunciation be made, or if no provision be made for him in the will, he shall have such share of his wife's real and personal estate, as he would have had, if she had died intestate leaving children ; otherwise, he shall have no more thereof than is given him by the will.

Section 1 of chapter 65 provides: " In cases where a widow is not entitled to all the real estate of her husband, under the provisions of section 1, chapter 78 of this act, she shall be endowed of one third of all the real estate, whereof her husband or any other to his use was at any time during the coverture seized of an estate of inheritance, unless her right to such dower shall have been lawfully barred or relinquished."

Section 4 provides: "If any estate real or personal intended to be in lieu of her dower shall be conveyed or devised for the jointure of the wife, such conveyance or devise shall bar her dower of the real estate or the residue thereof."

Section 7 provides : " If a wife of her own free will leave her husband and live in adultery, she shall be barred of her dower and of her inheritance in his estate, unless her husband be afterwards reconciled to her and suffer her to live with him, or if she voluntarily leave her husband without cause such as would entitle her to a divorce from the bond of matrimony or from bed and board and without such cause and of her own free will be living separate and apart from him at the time of his death, she shall be barred of her dower and of her said inheritance."

Section 15 provides: " If a married woman die seized of an estate of inheritance in lands, her husband if he be not entitled to the whole thereof under the provisions of section 1 of chapter 78 of this act, shall be tenant by the curtesy in the one-third part thereof, except as provided in the next section."

Section 16 provides: " If any estate real or personal be delivered by the wife to the husband in lieu of his curtesy, and he accept the same, he shall be barred of his curtesy in the residue thereof, and if a husband of his own free will leave his wife, except for cause such as would entitle him to a divorce from the bond of matrimony or from bed and board, he shall be barred of his curtesy and of his inheritance in her estate, unless she afterwards becomes reconciled to and lives with him as his wife."

It will be observed that these provisions of our statute-law make most radical changes in the relations of husband and wife towards the property of each other, from their status

before the enactment of these statutes. In Virginia and West
Virginia previous to the enactment of these statutes, except
in unimportant particulars, the rights of each in the property
of the other remained as at common law. By these enact-
ments all the property real and personal owned by the wife
at the time of marriage or acquired by her subsequent to
marriage from any person other than her husband, became
her separate property, with all the incidents attached to the
separate property of married women at common law, except
so far as those incidents are modified by the provisions of the
statutes.

As to what those incidents were at common law has been
a subject of infinite difference of opinion in the decisions of
the English courts as well as in the decisions of the several
States. As to the character and extent of these differences in
England and America and as to many of the divergent views
upon this subject reference may be made to the case of *Rad-
ford* v. *Carwile*, 13 W. Va. 572, in which Judge Green in
delivering the opinion of the Court in a very able and ex-
haustive review of the authorities reaches certain conclusions
as to some of the incidents attached to the separate estate of
married women at common law, as to which there was great
contrariety of decision. But in that opinion and in the decis-
ion of the Court as contained in the syllabus the question,
whether or no the husband was entitled to curtesy in the sepa-
rate estate of his deceased wife at common law, is left un-
determined.

The Court says in the syllabus of that case: "Whether
this section" (section 3, chapter 66) "has had effect on the
question, whether a husband has any right to curtesy or as
distributee or administrator of his wife in reference to her
separate estate, is also doubtful; and we express no opinion on
this point." The court decides in that case, that the *corpus*
of the wife's separate estate was in no wise affected by the
equitable doctrine of a separate estate, which was devised to
prevent the acquisition by the husband of his marital rights
to all her personal property and the rents and profits of her
real property during the coverture; that the common law
effectually protected the *corpus* of her real estate against the
husband's control and against his debts; that her common

law disability to make any contract or incur any debt during her coverture, which will in any manner affect or change the *corpus* of her real estate, whether such real estate be separate property or not, is still in full force ; that the *corpus* of her real estate can only be affected or changed by the vendor's lien, when it has been reserved, or by a conveyance or specific lien created by deed, in which her husband has united with her, and which she executed after privy examination.

These conclusions of the court were reached after a full and exhaustive consideration of the various conflicting views taken by the courts of the different states and of the courts of England at different periods, which are discussed, classified, arranged and distinguished by Judge Green in his opinion in the case.

If it be true, that the object of the creation of the separate estate of married women was to protect that estate from the *marital* rights of the husband, "to prevent the acquisition by the husband of his marital rights to *all* her personal property *and the rents and profits of her real property during the coverture*," it would seem, that when the object was accomplished to its fullest extent, and the marital rights of the husband completely defeated, the end, scope and design of the separate estate would be accomplished. The mere marital rights of the husband before the creation of the separate estates of married women was the right absolutely to the personal property of the wife and to the rents and profits of the realty *during coverture*. That right to the rents and profits during coverture from the mere marital relation terminated upon the death of either husband or wife, because it was a right growing out of the marriage, which ceased when the marriage relation ceased.

But the husband might have a right to an enjoyment beyond the mere marital right of the rents and profits of the real estate of the wife, not growing out of the marital right, but growing out of a wholly different principle. The marital right grew out of the marital relation and ceased with it, but during the marital relation another right grew up, where in addition to the marriage there was issue born alive. In this case the husband was not only entitled to the enjoyment of the real estate by virtue of the marital right, but was also entitled to it upon another principle, that of being tenant by the cur-

tesy initiate, a tenancy created upon the theory, that the husband was the natural guardian of the child, and that it was his duty to maintain it and equip it for the inevitable struggle of after-life.

Whether the marital right ceased, and the right of tenant by the curtesy initiate began upon the birth of issue, it is not necessary to consider; for so far as I have been able to discover, there is no difference in the rights of tenant by the marital right and tenant by the curtesy initiate during the lifetime of the wife. Each was entitled to the enjoyment of the property, and it was liable to the same encumbrances of the husband during the coverture, and the wife's rights ceased during her life and the lifetime of her husband as fully in the one case as the other, the only difference being that upon the death of the wife the tenancy by the curtesy initiate ceased or was enlarged into the tenancy by the curtesy consummate, a tenancy, which in its attributes and consequences can only begin in fact after the wife's death   Then if it be true, that the separate estate at common law was created only to prevent "the acquisition by the husband of his marital rights to   *   *   *   *   the rents and profits of her real property during the coverture," it ought to be confined to that purpose and ought to cease, when that purpose is fulfilled. This I understand to be the spirit and scope of the decision of *Radford* v. *Carwile*, so far as it was necessary in that case to determine the rights of husband and wife in the separate property of the wife during coverture. In other words, the separate estate of the married woman was created only to prevent the attachment in the husband of the marital rights, and for no other purpose whatever.

"To understand the controlling reason for this distinction we must consider why courts of equity recognized at all her right to hold a separate estate. During her coverture by the common law she was under an absolute disability to make any contract, and her husband had a right to all her personal property and the rents and profits of her real property during the coverture. These were under his absolute control as owner and liable to his debts. But over the *corpus* of her real estate he had no control whatever; it did not belong to him and was not liable for his debts. The whole object of a court of equity

in recognizing a separate estate in a married woman was to deprive the husband of these marital rights and to recognize in the wife an ownership of that part of her property, of which by the common law her husband had the control and ownership; that is, to recognize in the wife an ownership during her coverture of her personal property and the rents and profits of her real estate. The common law fully recognized her ownership of the *corpus* of her real estate, and fully protected it against the control of her husband or from liability for his debts. There was no necessity for a court of equity to make any changes in the common law with reference to the *corpus* of her real estate, and they accordingly made no change. *
*  *  *  *  *  *  *  *  *  *  *

"That this is the true view of the equitable doctrine of a separate estate seems to me to be shown by the undisputed law, that so soon as the marital rights of the husband cease by his death, the courts of equity ceased to regard the estate of the married woman as a separate estate or liable to any of the rules of a court of equity in reference to such estate. Immediately on the death of the husband the wife may accordingly dispose of her separate property, though the deed creating the separate estate contains an express restraint on such alienation. As long as the husband's marital rights continue these restraints are binding on the wife. But as the courts recognized it as a separate estate simply to avoid the husband's marital rights, as soon as it is impossible for him, by reason of his death, longer to exercise any marital rights, the court at once ceases to recognize any longer the equitable separate estate, and therefore she can dispose of it as she pleases in violation of the restraints on alienation inserted in the deed creating the estate." *Radford* v. *Carwile* 13 W. Va. 671.

In the above opinion Judge Green refers to a number of authorities which carry this principle beyond this point to the extent of holding, that upon the death of the husband the separate estate ceases; but upon the second marriage of the widow it is revived with all the consequences of the separate estate; and upon the death of the second husband the separate estate again ceases and again revives upon the marriage to a third husband, and so onwards from time to time, ceasing and re-

viving alternately upon each alteration of her personal condition.

This seems to me the true veiw of the subject, and therefore that, the purpose of the separate state of the married woman being confined to the marital rights of the husband, it does not and can not affect those questions, which may arise as to that estate after the marriage relation ceases. Curtesy consummate is an interest, which accrues to the surviving husband after the marital relation terminates by the death of the wife, and cannot be affected by the separate estate of the wife, which only had existence during their joint lives, unless there was something in the instrument creating the separate estate other than the ordinary terms necessary to create such an estate.

Chapter 66, sections 1, 2 and 3 before referred to makes all the property owned by the wife at the time of marriage or subsequently acquired from any person other than her husband her separate estate. As to whether there was curtesy at common law on the separate estate of the wife, a question considered doubtful in *Radford* v. *Carwile,* has been much discussed, in consequence of the different views entertained by different courts as to the effect of the creation of the separate estate of the wife. (vide 1 Cruise 325 ; 1 Ves. 298; 3 Atk. 695 ; 3 Rand. 377 ; 2 Tucker 59, 263 ; *Billings* v. *Baker,* 28 Barb. 343 ; *Vallance* v. *Bausch, Id.* 633; *Hurd* v. *Cass,* 9 Barb. 366 ; *Clark* v. *Clark,* 24 Barb. 581 ; *Toney* v. *Marvin,* 15 Mich. 60 ; *Thurber* v. *Townsend,* 22 N. Y. 517; Schouler's Domestic Relations 196; Maig. Husband and Wife 307 ; *Knight* v. *Knight,* 6 Sim. 121 ; *Bradley* v. *Hughes,* 8 Sim. 149 ; *Benson* v. *Benson,* 6 Sim. 126 ; *Radford* v. *Carwile,* 13 W. Va. 572). One class of authorities, followed in *Radford* v. *Carwile,* limits the effect of that estate to the continuance of the marital relation and confines the wife's power of disposition as to the real estate to the rents and profits. Another class extends the wife's power to the *corpus* of the realty. (1 Bishop on Married Woman, § 852 ; White & Tudor's Lead. Cas. Vol. II, p. 490 ; *Taylor* v. *Meads,* 34 L. J. (N. S.) ch. 203; *Hull* v. *Waterhouse,* 5 Greenlf. ; *Whitesides* v. *Cannon,* 23 Mo. 457; *Leake* v. *Benson,* 29 Gratt. 15, 64 ; 13 W. R. (V. C. S.) 660; 11 Jur. (N. S.) 361 ; *Pride* v.

*Bubb*, 7 L. R. ch. app. 64; *Appleton* v. *Rowley*, Law R. 8, Eq. 139, 149; *Adams* v. *Gamble*, 12 In. Ch. R. 102; *Atchinson* v. *Leurann*, 33 L. T. 302; *Yale* v. *Dederer*, 21 Barb. 286.)

The right of curtesy in the separate estate of the wife at common law depends entirely in my opinion upon the decision of the question which of the two classes of authorities referred to holds the correct view of the purpose, extent and limitation of the separate estate. My own opinion is, that the true view is taken in *Radford* v. *Carwile* and the line of authorities relied upon in that case. It would follow then from the view taken there upon this subject, that curtesy did exist in the separate estate of a married woman at common law.

In New York, from the statutes of which state chapter 66 in the Code is almost entirely taken, this question has been much discussed. In *Billings* v. *Baker*, 28 Barbour 343, it was held, that at common law there was no curtesy in the separate estate of a married woman. In *Vallance* v. *Bausch*, 28 Barbour 633, this decision was dissented from, and in *Thurber* v. *Townsend*, 22 N. Y. 517, the case of *Vallance* v. *Bausch* was disregarded; and the case of *Billings* v. *Baker* was considered as containing the true view of the subject.

The provision of our statute on this subject differs from the New York statute, in the provision to be found as a proviso to § 3, ch. 66. "*Provided,* That no married woman, unless she is living separate and apart from her husband, shall sell and convey her real estate, unless her husband joins in the deed or other writing, by which the same is sold and conveyed," and in the provision of § 15, ch. 65, "If a married woman die seized of an estate of inheritance in lands, her husband * *. * * shall be tenant by the curtesy in the one third thereof." The first provision evidently limits the wife's control over the separate real estate to the rents and profits by prohibiting her from disposing of the *corpus* unless her husband join in the sale and conveyance, as § 11, ch. 78, prevents a disposition by will without his acquiescence, so far as his interest in her estate is concerned, and § 15, ch. 65, provides for curtesy in all the real estate, of which she died seized. Whatever doubt and conflict of authority there was at common law upon the question of curtesy in the wife's separate estate, is set at

rest by these provisions of our statute, which entitle the husband to curtesy in all the real estate, of which the wife dies seized, whether that estate was separate estate or not.

Previous to the adoption of section 15, chapter 65, curtesy was left as at common law and was not the subject of legislative enactment either in Virginia or West Virginia. It can be readily seen, that in consequence of the adoption of the statute making all property, which the wife has at the time of marriage, or which she acquires after marriage by gift, grant, devise or bequest, from any person other than her husband, her sole and separate property, and in consequence of the very great doubt and conflict of authority as to whether curtesy existed in the separate estate, especially as that doubt was so great, that in the State, from which the provisions of our statute were taken, that question was considered in three different cases, the first holding one view, which was reversed in the second, while the third reversed the second and adopted the view of the first, it was eminently proper and desirable, that this vexed question should be set at rest forever, so far as it concerned our state. Hence the provisions just above adverted to.

But in addition to settling that question at least one change was made in the common law curtesy, viz: The reducing the life-interest in the whole to a life-estate in one third of the real estate, of which the wife died seized. Now whether the statute was enacted to do more than settle the doubtful question of whether there was curtesy at all in the separate estate of the wife, and to reduce the interest from a life-estate in the whole to a life-estate in one third, or whether in addition to those purposes, which are manifest, it was intended to create a new kind of life-estate distinguished from the common law estate of curtesy and lacking one of the common law requisites, birth of issue, is by no means free from doubt or difficulty.

On the one hand it may be said, that taking the statutes, which I have quoted on the subject of husband and wife and their relations to the property of each other, to be found in the Code, *in pari materia*, the purpose is plain to place husband and wife upon the same footing as to the property of each other in almost all respects; that the wife upon the

death of the husband was entitled to a life-interest in one third of his real estate, whether there was issue born alive or not. So in enacting section 15, chapter 65, it was the intention to give him a like interest in her real estate, whether there was issue born alive or not; that the statute in providing, " If a married woman die seized of an estate of inheritance in lands, her husband, if he be not entitled to the whole thereof under the provisions of section 1 of chapter 78 of this act, shall be tenant by the curtesy in the one third part thereof," &c., intended to and did give all the conditions necessary to establish the right to curtesy, to wit, marriage, seisin and death of the wife; that these were all the conditions required by the statute, which intended to omit the theretofore required condition of birth of issue.

On the other hand it may be said, leaving out of view any such supposed intent, that there was a substantial and sufficient reason for the passage of a statute providing for the curtesy of the husband, because of the adoption of the law making all the wife's real estate separate property, and because the vexed question, whether in the wife's separate estate at common law the husband was entitled to curtesy, and that that purpose and the reduction of that curtesy from a life-estate in the whole to a life-estate in the one third was all that was intended by the statute, that the statute using the term "curtesy," which had a fixed, well understood common law meaning, must be understood to have used it with its common law meaning attached ; that the statute did not intend to alter the common law conditions, upon which such an estate should arise, but by the use of that term with its well known meaning showed a purpose not to alter the conditions. If it was the intention of the statute to make the alteration and create a new kind of life-estate, this could have been accomplished by a change of phraseology as follows : " If a married woman dies seized of an estate of inheritance in lands, her husband shall have a life-estate in the one third thereof." But by using the word " curtesy," which with its well known meaning conveyed the idea of a surviving husband of a deceased wife, by whom he had issue born alive, it would seem that that condition was not to be dispensed with.

The section and chapter of the Code referred to in the

words, " if he be not entitled to the whole thereof under the provisions of section one. chapter seventy-eight of this act" provide: " When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his or her kindred, male or female, as are not aliens, or to the husband or wife in the following course: I. To his or her children and their descendants. II. If there be no child, nor the descendants of any child, then to his or her wife or husband." If then there were no children nor the descendants of any child, the husband took the whole of the estate in fee, and the statute would have been without meaning, if its true construction is, that it created an estate of curtesy without the requisite of birth of issue. So far as the birth of issue of the husband and wife is concerned, without such issue he took the estate in fee and with such issue, if it or any descendant of it survived, he took a life-estate in the one third.

But suppose the wife had issue,.or the descendants of any issue by a former marriage surviving her, then in that event the surviving husband did not take the estate in fee, but was entitled to his curtesy dependant upon the question under consideration.

The reason for curtesy at common law, to wit, the obligation of the parent to maintain the child, would not exist in such case, for there was never any legal obligation upon the husband to maintain the children of his wife by a former marriage; and the estate in curtesy, which was intended for that purpose, would be made the instrument for defeating that purpose by being given to one who was under no obligation to carry it out. The children by the former marriage would be left without maintenance, at least so far as a portion of their property is concerned, while a stranger would be enjoying its fruits, which by nature and reason should be theirs.

I have spoken so far of the provision, as it formerly stood in the Code ; but as by section 15, chapter 207 of the Acts of 1872-3, the husband, if entitled to curtesy at all, is entitled to a life-interest in the whole instead of a life-interest in one third of the real estate, the construction that the birth of issue is not a requisite to curtesy, is one, which a court would adopt with great reluctance, because it would result in taking

from the children by a former marriage the property which regularly belonged to them, and the revenues of which were necessary for their maintenance and education, and in giving it to a stranger who would be under no obligation legal or moral to maintain and educate them. To give the statute that construction would not only strip curtesy, as it stood at common law, of its most important condition, but would work an injustice in many instances of the grossest character, and under a policy of the law, which, taking all the statutes upon the subject of husband and wife in *pari materia,* seems inaugurated for the purpose of curtailing the rights of the husband at common law, would, instead of diminishing, greatly enlarge those rights.

Section 1 of chapter 78 of the Code is repealed by section 1, chapter 191 of the Acts of 1872-3; and the husband is no longer heir to the wife nor the wife heir to the husband, except in a very remote contingency. The only effect that repeal has on the question under consideration is, that under the law, as it now stands, the only interest, that the husband can have in the realty of the wife after her death, is the estate by curtesy; and he cannot upon the failure of children or descendents of any child inherit the estate in fee. This repeal eliminates from the reasons given for the construction of the Act of 1872-3, one of the reasons given for concluding, that the Legislature in the Code intended to omit birth of issue as one of the conditions, upon which the right to curtesy existed, except so far as the legislative intent is to be derived from a consideration of all the acts on the subject taken *in pari materia.*

The conclusion I reach is, that the Legislature did not intend to dispense with the common law requisite of birth of issue as one of the conditions, upon which the right to curtesy depended at common law; that the defendant in error is not entitled to curtesy in the real estate of his deceased wife. I am of opinion therefore to reverse the judgment of the court below setting aside the verdict of the jury, and to enter judgment upon said verdict in this Court.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.